THE STATE OF KANSAS v. ED. COLLINS.

No. 333.

1. INTOXICATING LIQUORS — *Information — Verification by County Attorney.*   Where an information charging the unlawful sale of intoxicating liquors is positively verified under the forms of law by the public prosecutor, and the defendant is arrested on a warrant issued thereon and enters into a recognizance for his appearance at a subsequent term of court, *held*, that a motion to quash the warrant and information on the grounds "that the information is not properly verified, and that the county attorney has no personal knowledge of the facts alleged therein" is properly overruled, without hearing evidence tending to show that the only knowledge possessed by the county attorney was based on information and belief.

2. ———— *Evidence — Sales by Another Person.*   Upon the trial of C. for the unlawful selling of intoxicating liquors, it is error for the trial court to refuse to strike out testimony that one K. had sold to the witness intoxicating liquors, where there is no showing as to what relation, if any, existed between C. and K., or that C. was in any way responsible for the unlawful acts of K.

3. ———— *Election of Offenses — Certainty Required.*   Where the county attorney is required to elect on what particular sale of intoxicating liquors he will rely for a conviction, testimony of more than one unlawful sale having been given under a single count, it is necessary for the prosecutor to designate in some proper way with reasonable certainty that particular transaction on which he relies for conviction.

Appeal from Osborne district court; R. M. PICK-LER, judge.   Opinion filed March 21, 1899.   Reversed.

*S. W. Smith*, county attorney, for The State.
*D. M. Thorp*, and *J. W. Tucker*, for appellant.

The opinion of the court was delivered by

McELROY, J. : The county attorney filed an information in the district court of Osborne county, charging the defendant Ed. Collins in eight counts with the unlawful sale of intoxicating liquors, and in the ninth

count with maintaining a common nuisance under
the prohibitory law.   The defendant was arrested
on a warrant issued thereon, and thereafter, on the
27th day of September, 1897, entered into a recog-
nizance for his appearance at the next term of court.
At the October, 1897, term the case was continued, and
the defendant entered into a recognizance for his ap-
pearance at the February, 1898, term.   At the Febru-
ary term the defendant filed his motion to quash the
information and to compel the county attorney to at-
tach thereto the testimony of witnesses examined be-
fore him, which motion was overruled, the defendant
excepting.   Thereafter the defendant waived arraign-
ment and pleaded not guilty.   He was convicted on
the sixth count of the information, and was sentenced
to pay a fine of $100 and to be confined in the county
jail thirty days.

The motion to quash the information was based on
the grounds that the information was not properly
verified ;  that the county attorney had no personal
knowledge of the facts alleged therein ;  that prior to
the filing of the information the county attorney had
examined witnesses touching their knowledge of the
violations of the prohibitory law by the defendant and
that such testimony should be attached to the informa-
tion.   The information was properly verified ;  it was
verified by the positive oath of the county attorney.
This was sufficient to authorize the issuance of the
warrant.   On the hearing of the motion, it was agreed
"that no written statements of evidence were taken
before the county attorney before the commencement of
this action or the filing of the complaint."   The de-
fendant offered to introduce evidence in support of his
motion to the effect that the county attorney had no
personal knowledge of the facts alleged in the informa-

tion.  This evidence was properly rejected.  Before the motion to quash was filed, the defendant had entered into a recognizance for his appearance at a subsequent date, whereby he waived all irregularity, if any, in the warrant and arrest.  (*The State v. Longton*, 35 Kan. 375, 11 Pac. 163 ; *Junction City v. Keeffe*, 40 id. 275, 19 Pac. 735 ; *The State v. Dugan*, 52 id. 23, 34 Pac. 409.)

The ruling of the trial court on the evidence could not prejudice the rights of the defendant if the motion to quash the information was properly overruled. There is no complaint made as to the ruling of the court on the motion to quash.  The information was verified under the forms of law by the public prosecutor.  Such a verification is sufficient as a basis for the issuance of a warrant.

Complaint is made that the court erred in overruling the defendant's motion to strike out the following testimony of John Cole as incompetent :

" Ques.  When did you next get anything there from Mr. Collins, if any?  'Ans.  Well, I should judge it was June ; somewhere along there.

" Q.  What did you buy that time?  A. Bought some beer.

" Q.  Did you get it in a bottle or glass.  A. Got it in a glass.

" Q.  I now ask him to describe as I did in the question, what was in the room, who was in the room at the time you purchased this liquor referred to?  A. The second time?

" Q.  Yes, sir ; the second purchase.  A. Why, I think Mr. Kelly was in at that time.

" Q.  Who did you purchase it from?  A. I think I got it that time from Mr. Kelly.

" Q.  Was Collins present at that time?  A. I can't say ; I don't recollect."

There is nothing in the record to show what rela-

tion, if any, Kelly sustained to the defendant.   To
hold the defendant responsible for the sale made by
Kelly, it would be necessary to show that the de-
fendant was, in some manner, responsible for his acts.
In the absence of any showing, it cannot be presumed
that the defendant was in any manner responsible for
the unlawful or wrongful acts of Kelly.   This testi-
mony was incompetent and should have been stricken
out; it constitutes the only element of uncertainty
entering into the trial of the case.   The court erred
in overruling the defendant's motion to strike out
this evidence.

Complaint is made also that the trial court erred in
not requiring the state to make its election on the
sixth count more definite and certain; that the elec-
tion as made was too vague, indefinite and uncertain
under the evidence.   When the state had concluded
its evidence, the defendant filed a motion that the
prosecution elect on which sale it would rely for a
conviction on the several counts of the information.
The state elected as to the sixth count, as follows:
"The state further relies on the sixth count, being
the second sale made to and testified to by John Cole,
during the early part of July, 1897, or last of June,
1897.

The testimony of John Cole as to the second sale is
as follows:

"Ans.   The first I ever got there was two bottles of
beer; about March or April, 1897, I bought one from
Mr. Collins.

"Ques.   When did you next get anything there from
Mr. Collins, if any?   A.   Well, I should judge it was
June; somewheres along there.

"Q.   What did you buy that time?   A.   Bought
some beer.

"Q.   Did you get it in a bottle or glass?   A.   Got it
in a glass.

26—8 KAN. APP.

"Q. I now ask him to describe, as I did in the question what was in the room—who was in the room at the time you purchased this liquor referred to? A. The second time?

"Q. Yes, sir; the second purchase. A. Why, I think Mr. Kelly was in at that time.

"Q. Who did you purchase it from? A. I think I got it that time from Mr. Kelly.

"Q. Was Collins present at that time? A. I can't say; I don't recollect.

"Q. You may state when the third time was, to the best of your remembrance, you bought liquor from Collins? A. I can't say when the third time was; I didn't keep any track. It was as early as July — I think it was along in the forenoon; Ed. Collins was there; I stayed long enough to get a drink and went out."

<em>Cross-examination.</em>

"A. The second time I was ever in there, I should judge, was the 1st of March or April; it was in the evening, about eight o'clock. There were several persons in the room. Collins was helping dish out beer; I know I got one bottle from him. The next time I was there in that place of business I think was in the fore part of June; it was along in the forenoon some time. I stayed in there that time five or ten minutes. I don't know that Ed. Collins was there. I think Tom Kelly was there.

"Q. When was the next time you was in there? A. Well, I think that was some time in June or July, fore part, I think; some time in June, I should say; yes, some time in June.

"Q. What was it you purchased the third time, if you remember; that is, what kind of liquor? A. I think it was a glass of whisky I got, to the best of my knowledge. I got it from Mr. Collins."

The first sale was made about April, 1897, by Collins; the second sale was made by Kelly in June; the third sale was made by Collins in June or July. There is nothing in the record to show what, if any,

relation Kelly sustained to Collins.   It appears to
have been left as a mere surmise, or conjecture, as to
whether the defendant was anywise responsible for
the sale made by Kelly.   The third sale was made by
defendant, and appears to have been whisky.   The
county attorney in his brief says that the prosecution
elected to rely for a conviction under the sixth count
on the second sale by Ed. Collins to and testified to
by John Cole during the early part of July or last of
June, 1897, the same being whisky ; and that it was
so understood by the jury, the court and all con-
cerned.   It may be that the county attorney so under-
stood the election, but the sale of whisky was the
third sale and not the second.   This is stated by the
witness, both in his direct and cross-examination ; so
that if the state intended to rely on the sale of the
glass of whisky, then it was the third sale on which
the state relied.

If the incompetent testimony of Cole had been
stricken out, as it should have been, this element of
uncertainty would have been eliminated.   Who can
say that all of the jurors understood the election to
apply to the third sale, when it specifically states the
second?   The language of the election is :  "The state
further relies on the sixth count, being the second
sale made to and testified to by John Cole, during
the early part of July, 1897, or last of June, 1897."
Some of the jurors may have thought the election re-
ferred to the sale of beer made by Kelly, while others
of the jurors may have thought it referred to the
transaction which included the sale of the glass of
whisky.   By this process a verdict might have been
reached without all of the jurors consenting and
agreeing on the same proposition.   If five of the
jurors took the election literally to mean the second

sale, their judgment would certainly be based on the transaction between Kelly and the witness Cole, and if the other seven jurors took the election, as the county attorney insists, to refer to the sale of the glass of whisky by the defendant Collins, then we would have a verdict of guilty without the concurrence of all of the jurors.

In a criminal trial, where the state has offered evidence tending to prove several distinct and substantive offenses, it is the duty of the court, upon motion of the defendant, to require the prosecution to elect, before the defendant is put on his defense, with reasonable certainty, on which particular transaction the prosecution will rely for conviction. (*The State v. Schweiter*, 27 Kan. 500; *The State v. Crimmins*, 31 id. 376, 2 Pac. 574; *The State v. Moulton*, 52 id. 69, 34 Pac. 412; *The State v. O'Connell*, 31 id. 383, 2 Pac. 579; *The State v. Guettler*, 34 id. 582, 9 Pac. 200.)

From what we have said, it follows that the court erred in overruling the defendant's motion for a new trial, for the reason that the court refused to strike out the incompetent testimony, and for the failure on the part of the court to require the state to make its election more definite and certain.

The judgment of the court below will be reversed and cause remanded for a new trial.