(123 N. W. 386).

---

### State of North Dakota v. W. E. Longstreth.

Opinion filed June 11, 1909.

**Criminal Law — Demurrer — Indictment and Information — Definiteness.**

1. A demurrer to an information in a criminal action upon the ground stated in subdivision 2, section 9900, Rev. Codes 1905, as follows, "That it does not substantially conform to the requirements of

this Code," is too indefinite. The pleader should specify wherein such information fails to conform to the requirements of the Code of Criminal Procedure so as to apprise the court of the precise point of the objection.

**Same — Abortion — Alleging Means — Accomplishment.**

2. An information charging the offense of procuring an abortion need not specifically describe the drug or medicine administered, nor the kind or character of instrument or instruments used, or the manner of such use, where such information alleges that the kind and character of such instrument and the manner of its use are unknown.

**Same— Code Provisions — Abolish Common Law — Form of Pleading.**

3. The strict rules of the common law regarding criminal pleadings have been expressly abolished in this state, and under section 9856, Rev. Codes 1905, the information or indictment is sufficiently definite if the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repitition, and in such manner as to enable a person of common understanding to know what is intended. * The information or indictment is sufficient if the act or omission is charged with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case.

**Indictment and Information — Motion to Quash — Statutory Grounds — Code Provisions Exclusive.**

4. Section 9891, Rev. Codes 1905, enumerates the grounds upon which a motion to quash an information or an indictment may be made, and this action is exclusive. * Following State v. Tough, 12 N. D. 425, 96 N. W. 1025, and State v. Foster, 14 N. D. 561, 105 N. W. 938.

**Same — Preliminary Examination — Knowledge of Complaining Witness — Practice.**

5. The fact that the complaining witness, at the time he instituted the criminal proceedings before the committing magistrate, did not possess actual, personal knowledge of the facts constituting the offense, is not a sufficient ground for quashing the information based upon the preliminary examination before such magistrate. The allegations in the criminal complaint before the magistrate were positive, and not on information and belief, and such complaint was sworn to positively. Hence it was improper practice for the district court to permit defendant to examine the complaining witness for the purpose of proving a lack of personal knowledge on his part of the facts at the time he instituted the proceedings before the committing magistrate. The motion to quash the information was properly overruled, not only for the foregoing reasons, but on the further ground that the record discloses that such complaining witness did

not act on hearsay evidence in making the complaint, as the defendant, prior to the institution of the prosecution, made a full admission to him of the facts tending to show his guilt.

### Witnesses — Cross-Examination — Discretion of Court.

6. The latitude and extent of the cross-examination necessarily must rest largely in the discretion of the trial judge, and it is only in case of clear abuse of such discretion, resulting in manifest prejudice to the complaining party, that this court will interfere. Tested by this rule, it is held that the cross-examination of the complaining witness was not erroneously restricted.

### Criminal Law — Evidence — Admissions — Stenographic Notes as Proof of.

7. The state, over defendant's objection, was permitted to prove by the witness Olsen, who was the official court stenographer, certain admissions made by defendant while testifying at a previous trial of a civil action wherein he was defendant, which testimony was relevant and material, and for such purpose the witness was permitted to refer to and read from a transcript of his stenographic notes after laying a proper foundation by showing that such notes were correctly taken and transcribed. *Held,* not error, as proof of such prior admissions was clearly proper. (Ellsworth, J., dissenting.)

### Criminal Law — Abortion — Necessary to Save Woman's Life — Verdict — Sufficiency of Evidence.

8. Defendant's contention that the evidence is insufficient to support the verdict of guilty, upon the ground that the state failed to prove that the abortion was not necessary to preserve the life of the woman, was properly overruled, as the facts and circumstances sufficiently established at least a prima facie case in favor of the state on such issue. (Ellsworth, J., dissenting.)

### Same — Evidence — Presumption and Burden of Proof.

9. The state must both allege and prove such negative, but whether in the first instance the state must furnish direct affirmative proof of such negative fact, or whether, in the absence of any such proof, the presumption that it was not necessary suffices to establish a prima facie case is not determined, as the evidence, both direct and circumstantial, clearly establishes a prima facie case in behalf of the state without the aid of such presumption. (Ellsworth, J., dissenting.)

Appeal from District Court, Stutsman County; BURKE, J.

W. E. Longstreth was convicted of procuring an abortion, and, from an order denying a new trial, he appeals.

Affirmed.

*Lee Combs,* for appellant.

Information for committing the crime of abortion must allege the means of its accomplishment. Cochran v. People, 51 N. E. 845; Rhodes v. State, 27 N. E. 866; Com. v. Corkin, 136 Mass., 429; 1 Cyc. 728.

Complainant must state the facts constituting a crime upon his positive knowledge. State Ex Rel. Poul v. McLain, 102 N. W. 407; People v. Heffron, 19 N. W. 170; Blodgett v. Race, 18 Hun, 132; In Re Blum, 9 Misc. Rep. 571, 30 N. Y. Supp. 396; State v. Good, 77 Tenn., 240; Butler v. State, 30 So. 338.

Stenographer's notes are not competent evidence. State v. Foulk, 45 Pac., 603; Cerrusite Min. Co., v. Steele, 70 Pac. 1091; Smith v. State, 60 N. W. 585; Jordan v. Howe, 95 N. W. 853.

State must prove that alleged abortion was not necessary to save prosecutrix's life. Moody v. State, 17 Ohio St. 110; State v. Clements, 14 Pac. 410; State v. Glass, 5 Ore., 73.

*Andrew Miller,* attorney general; *Alfred Zuger,* assistant attorney general, and *George W. Thorp,* for the state.

Demurrer to criminal information must specify objection. Benham v. State, 1 Iowa, 542; State v. Groom, 10 Iowa, 308; Flohr et al., v. Territory, 78 Pac. 565; People v. Crane, 87 Pac. 239; Com. v Smith, 27 S. W. 810; People v. Hill, 3 Pac. 75.

Stenographer's notes are competentt to prove statements of a witness. People v. Mitchell, 29 Pac. 1106; People v. Butler et al., 69 N. W. 734.

Sworn testimony of a party as a witness in a former proceding is competent to show an admission or confession. Dickerson v. State of Wisconsin, 4 N. W. 321; States v. Hopkins, 42 Pac. 627; Hendrickson v. People, 10 N. Y. 13; Com. v. Reynolds, 122 Mass., 454; U. S. v. Kirkwood, 13 Pac. 234; State v. Carroll, 51 N. W. 1159; 3 Enc. Evidence 340; 1 Enc. Evidence, 481; Buddee v. Spangler, 20 Pac. 760; Clayton v. Clayton, 4 Colo., 410, 417; Maxwell v. Harrison, 52 Am. Dec. 385; 1 Enc. Evidence, 482, 483, 484, 485; People v. Gallagher, 42 N. W. 1063; Wigmore on Evidence, Vol. 4, section 2363; Wigmore on Evidence, Vol. 2, section 1048; Wigmore on Evidence, Vol. 2, section 1051; Elliott on Evidence, Vol. 1, sections 238-239 and cases there cited.

The state's burden to show that the production of a miscarriage was not necessary to save complainant's life, is complied with, in the absence of proof to the contrary, by the presumption that it was so

necessary. 1 Cyc. 188; State v. Scheurman, 70 Mo., App. 518; State v. Lee, 69 Conn. 186, 37 Atl. 75; Hatchard v. State, 48 N. W. 380; Ellliott on Evidence, Vol. 4, section 2771 and cases cited; State v. Meek, 70 Mo., 355; State v. Owens, 22 Minn., 238; State v. Crowell, 25 Me., 173; Hinckley v. Penobscot, 42 Me. 89; State v. Whittler 21 Me., 341.

It may be shown by circumstantial evidence. Howard v. People, 57, N. E. 441; Bardford v. People, 20 Hun 309; 1 Cyc. 190 and cases cited; State v. Montgomery, 33 N. W. 143; State v. McLeod, 37 S. W. 828; Moore v. State, 40 S. W. 287; State v. Lilly, 35 S. E. 837; Diehl v. State, 62 N. E. 51; Com. v. Drake, 124 Mass., 21; Underhill on Crim. Evidence, sections 347-349; People v. McGonegal, 17 N. Y., Supp. 147; State v. Watson, 1 Pac. 770.

Fisk, J. Appellant was convicted in the district court of Stutsman county of the crime of procuring an abortion, as defined in section 8912, Rev. Codes 1905, and from an order denying his motion for a new trial he appealed to this court. He was assigned 13 alleged errors, which are grouped into five subdivisions of his printed brief. These will be considered in the order presented.

1. The court below overruled his demurrer to the information, and the correctness of this ruling is first challenged; the ground being that such information fails to state the means or manner of the use of the instrument or instruments upon and in the body of the female. The statute defining the offense of which appellant was convicted is as follows: "Every person who administers to any pregnant woman, or who prescribes for any such woman, or advises or procures any such woman to take any medicine, drug or substance, or uses or employs any instrument or any means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary to preserve her life, is punishable," etc. The charging part of the information is as follows: "That at the said time and place the above-named defendant, W. E. Longstreth, then and there being, did administer to, and prescribe for, one Ida Wagner, then and there being pregnant with child and did then and there advise and procure said Ida Wagner to take certain medicines, drugs, and substances, the names of said medicine, drugs, and substances being to this informant unknown, and did then and there use and employ in and upon the body of said Ida Wagner certain instruments and other means unknown to this informant all with the intent then and there and thereby to procure the miscar-

riage of the said Ida Wagner; said miscarriage then and there not being necessary to preserve the life of the said Ida Wagner."

It will be noticed from a reading of the above statute that the offense consists in the use of any of the means therein mentioned, upon a pregnant woman, with the intent to procure her miscarriage, unless the same is necessary to preserve her life. The offense defined by the statute is complete by the use of such means with the intent aforesaid, regardless of whether the miscarriage is in fact consummated or not. The grounds of the demurrer are: "(1) The said information does not substantially conform to the Code of Criminal Procedure of the state of North Dakota. (2) More than one offense is charged therein. (3) The facts stated in said information do not constitute a public offense." There are at least two answers to appellant's contention, each of which are conclusive against him: First, the demurrer is too indefinite to raise the objection in question; and, second, even if properly raised, there is no merit in the objection.

The first ground is relied on as sufficient to raise the objection above stated. In this we are clear that counsel are mistaken. Such ground is couched in substantially the language of the statute relating to a demurrer in a criminal action. Rev. Codes 1905, section 9900. This was not sufficient. People v. Hill, 3 Utah, 334, 3 Pac. 75; Flohr v. Territory, 14 Okl., 477, 78 Pac. 565. As said by the court in the Utah case: "It will not do to demur in the language of subdivision 2 of section 192 Code Proc., and stop at that. The precise grounds must be pointed out." The reason for this is obvious. The information may, in many respects, fail substantially to conform to the requirements of the Code of Criminal Procedure, and hence the court is entitled to have such objection specifically pointed out; but, if we assume that the demurrer is sufficiently definite to raise such objection, it is entirely clear that the demurrer was properly overruled upon the merits. The authorities are practically unanimous in holding that it is unnecessary to specifically describe the medicine or drug administered to the female by defendant, or which he advised or procured her to take, and that an indictment or information charging the use of an instrument with intent to procure an abortion need not describe the character or kind or instrument used, if it alleges that the same is unknown, and this rule also obtains with reference to alleging the manner of the use of such instruments. In a very recent case in Minnesota, an indict-

ment in almost the identical language of this one was sustained; the court saying: "That it (the indictment) does not sufficiently notify the offender of the nature of the charges to enable him to prepare for trial has no reasonable foundation. That his défense could possibly turn or depend upon the exact instrument or method of operation is not within the realm of possibility." State v. Bly, 99 Minn., 74, 108 N. W. 833. We deem it unnecessary to cite at length the other authorities bearing upon this phase of the case. Many of them are collated in a valuable note in 11 Am. & Eng. Ann. Cases, p. 221. See, also, Eggart v. State, 40 Fla. 527, 25 South, 144; State v. Quinn, 2 Pennewill (Del.) 339 45 Atl. 544. The cases cited by appellant's counsel arose in states where the strict common law rules governing criminal pleadings are still in force. In this as well as in many other states, the Legislature has expressly abolished such rules. See Rev. Codes 1905 sections 9846-9857, inclusive. We quote from the statute as follows:

"Sec. 9846. All the forms of pleading in criminal actions, and rules by which the sufficiency of pleadings is to be determined, are those prescribed by this Code."

"Sec. 9856. The information or indictment is sufficient if it can be understood therefrom: * * * (6) That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. (7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case."

In this connection, see State v. Holong, 38 Minn., 368, 37 N. W. 587, and State v. Lewis, 13 S. D. 166, 82 N. W. 406. The opinion in the Minnesota case is particularly applicable here. We quote: "That the old form of pleading in criminal actions has been abolished, and the rules by which the sufficiency of such pleadings is to be determined, are those prescribed by the statute. That an indictment is sufficient if it can be understood therefrom that the act or omission charged as the crime is stated with such a degree of certainty as to enable the court to pronounce judgment upon conviction, according to the right of the case. That it was the intent of the Legislature to free criminal pleading from the technical rules (many of which are senseless) which had grown up on the subject. That,

where the criminal character of the act is as strongly stated in the words used in the indictment as those given in the statute, they are the words used in the statute defining the offense, and mean as much in the indictment as in the statute, and in either they describe the offense."

The second and third grounds of the demurrer need not be noticed, as they are not discussed in appellant's brief, and are therefore presumably abandoned.

2. The next assignment of error is predicated upon the ruling of the trial court in denying appellant's motion to quash the information; the particular point relied on being that Warner, the complaining witness, in fact possessed no personal knowledge of the facts stated in the complaint before the committing magistrate. Hence it is argued that he could not properly make such complaint, and therefore the information filed in the district court could not be based on a preliminary examination held thereunder. Such contention is wholly devoid of merit. It was a most unusual and unheard of practice to permit the defendant, in aid of his motion to quash, to examine this witness for the purpose of showing that he verified such complaint without having personal knowledge of the facts therein positively alleged. If such practice should be tolerated, many guilty persons would go unpunished. No authority for such practice has been cited and we believe none exists. Cases where the complaint alleging facts merely on information and belief, or where such complaint is verified merely on information and belief, are not in point. Here the facts were positively alleged and positively verified. This was sufficient under all the authorities. State v. Collins, 8 Kan. App. 398, 57 Pac. 38; Alderman v. State, 24 Neb. 97, 38 N. W. 36; State v. Stoffel, 48 Kan. 364, 29 Pac. 685; People v. Staples, 91 Cal. 23, 27 Pac. 523; Com. v. Mallini 214 Pa. 50, 63 Atl. 414; State v. Etzel, 2 Kan. App, 673 43 Pac. 798.

Another and complete answer to such contention is the fact that no such ground for quashing the information is mentioned in the Code. Section 9891 Rev. Codes 1905, states the grounds upon which such motion may be made, and this section is exclusive. State v. Tough, 12 N. D. 425, 96 N. W. 425; State v. Foster, 14 N. D. 561, 105 N. W. 938. Furthermore, the record discloses that Warner, the complaining witness, did not act on hearsay evidence, as the defendant prior to the institution of the prosecution made a full ad-

mission to him of the facts showing his guilt. The motion was properly overruled.

3. The third ground assigned as a reason why a new trial should be granted is that the trial court erroneously restricted the cross-examination of the witness Warner. We have carefully examined the record in connection with this assignment, and we are entirely convinced from such examination that the trial court accorded to defendant his full right of cross examination. At least it cannot be said that the trial court abused its discretion in limiting such cross-examination. It is well settled that the latitude and extent of a cross-examination rest largely in the discretion of the trial judge, and it is only in cases of a clear abuse of such discretion, resulting in manifest prejudice to the complaining party, that this court will interfere. State v. Foster, 14 N. D. 561, 105 N. W. 938. Counsel for appellant cites and relies upon several prior decisions of this court in support of his contention on this point, and especially the case of State v. Malmberg, 14 N. D. 523, 105 N. W 614; but we fail to find anything therein to warrant such contention under the state of the record in the case at bar, and we leave this branch of the case without further comment.

4. It is next contended that it was reversible error to permit the witness Olsen, who was the official court stenographer, to read from his stenographic minutes certain testimony given by defendant in a breach of promise suit theretofore tried in said court, wherein Ida Wagner was plaintiff and appellant was defendant. We fail to discover any prejudical error in the admission of such testimony. The record discloses that Olsen was first sworn as a witness, and testified that he took and correctly transcribed defendant's testimony on such prior trial, and he was asked and permitted to state the exact testimony of appellant upon such trial, and to do so it was necessary to refresh his memory by referring to such testimony as transcribed by him. This was eminently proper and it is apparent that in no other manner would it be possible for him to narrate such testimony exactly as given on the former trial. This testimony was clearly competent and very relevant and material, as it tended to prove a prior admission by defendant of the facts thus testified to by him. Proof of such admissions was undoubtedly proper. Macomber v. Bigelow, 126 Cal. 9, 58 Pac. 312; People v. Mitchell, 94 Cal. 550, 29 Pac. 1106; People v. Butler et al., 111 Mich. 483, 69 N. W. 734; State v. Hopkins, 13 Wash. 5, 42 Pac. 627; Com. v. Reynolds, 122

Mass., 454; State v. Carroll, 85 Iowa, 1, 51 N. W. 1159; People v. Gallagher 75 Mich. 512, 42 N. W. 1063; 1 Bishop's New Crim, Pro., section 1255; 3 Enc. Evidence (Camp) page 340, and cases cited; 1 Enc. Evidence 482, 483, 484, 485; 2 Wigmore on Evidence, sections 1048-1051; 1 Elliott on Evidence sections 238, 239 and cases cited. Counsel for appellant cites and relies upon the cases of State v. Foulk, 57 Kan. 255, 45 Pac. 603, Cerrusite Min. Co. v. Steele, 18 Colo., App. 216, 70 Pac. 1091, Smith v. State, 42 Neb. 356, 60 N. W. 585, and Jordan v. Howe, 4 Neb (Unoff) 667 N. W. 853 in support of his contention that such testimony was inadmissible; but, clearly, none of these cases are in point. They either involve rulings permitting similar proof of the former testimony of mere witnesses, not parties to the action, or were cases in which a certified transcript of the reporter's notes was offered in evidence as independent proof. Of course, this would be prejudicial error. The distinction between these cases and the case at bar is at once manifest.

5. But one other point requires consideration. It is contended that the evidence is insufficient to support the verdict, because, as alleged, the state failed to prove that the abortion was not necessary to preserve the life of this woman. This is the sole attack upon the verdict in so far as the sufficiency of the evidence is concerned. By the great weight of authority the state must both allege and prove such negative; but the decisions of the various courts which have had occasion to pass on the question are in irreconcilable conflict as to whether, in the absence of testimony to the contrary, the state is required to affirmatively establish such negative by direct proof, 1 Enc. of Evidence, page 56, and cases cited; 4 Elliott on Evidence, section 2771; Bishop on Statutory Crime (3d Ed.) section 762 and cases cited. Mr. Bishop, in speaking on the subject, says: "Under a statute which makes it an element of the offense that the abortion was not necessary, some courts hold that, though this want of necessity must be averred in the indictment, it need not be proved; but the burden is on the defendant to show a necessity. This is a sort of question on which judicial opinions differ." In the following cases it was held that the presumption obtains that it was not necessary that the abortion should be procured in order to preserve the life of the female, and that such presumption, in the absence of proof rebutting the same, aids the state in its proof by making out a prima facie case; State v. Lee, 69 Conn., 186, 37 Atl. 75; State v. Schuerman, 70 Mo. App. 518; 1 Cyc. p. 188. See, also, Hatchard

v. State, 79 Wis., 357, 48 N. W. 380. The following cases are to the contrary: State v. Clements, 15 Or. 237, 14 Pac. 410; State v. Aiken, 109 Iowa, 643, 80 N. W. 1073.

Under the record in this case we are not required to adopt either rule, as a consideration of the testimony serves to convince us that, without the aid of such presumption, the state has sufficiently established at least a prima facie case on this issue. The evidence establishes beyond any reasonable doubt the following facts: At the time the abortion was committed on her, Ida Wagner was a single person only 22 years of age, and was a strong, healthy, working girl. Prior thereto she had never had any ailments. For about ten months prior thereto defendant had kept company with and had promised to marry her. They repeatedly, since June, 1905, had sexual intercourse together, which resulted in her pregnancy, and defendant, who was a physician, administered to her drugs and medicines for the purpose of procuring her miscarriage, and on two separate occasions used an instrument in and upon her by inserting the same into her womb with the like object and intent. She testified that he never informed her until after the abortion had taken place what his purpose was in administering medicine and in performing the operations, and he never told her that an abortion was necessary to preserve her life; nor is there a scintilla of evidence tending to show such to be a fact. After the abortive agencies had taken effect, he left her alone in her room unattended, in a semiconscious condition, apparently attempting to keep such abortion a secret, and leaving this woman to take care of herself as best she could. When she thereafter found in her bed, in a bloody condition, portions of a partially matured child, he first explained to her the full import of the transaction. Defendant admitted to the witness Warner that he had had sexual intercourse with this woman, and that she was pregnant as a result thereof, and also that he had promised to marry her, but could not do so, giving as a reason that he did not love her. These facts, as well as all the other testimony and circumstances, furnish an adequate motive for his criminal conduct, and, to the extent that they furnish such motive, they also tend to disprove the necessity for procuring such abortion in order to preserve the woman's life. The circumstances all point to the conclusion that what defendant did was not so much to save the girl's life, but rather to shield himself from the resulting obligations consequent.

upon his illicit relations with her. That circumstantial evidence is competent to prove the absence of a necessity for the abortion in order to preserve the woman's life is amply supported by authority. 1 Cyc. p. 190, citing Howard v. People, 185 Ill. 552, 57 N. E. 441; State v. Aiken, 109 Iowa, 643, 80 N. W. 1073; Bradford v. People, 20 Hun. (N. Y.) 309.

We believe no reported case can be found holding that, under similar facts to those in the case at bar, the state has not established at least a prima facie case on this issue. It will be found that in most, if not all, the cases holding that the presumption that it was not necessary to abort the woman in order to save her life is not sufficient to establish a prima facie case on such negative issue in favor of the state, that there was no such strong circumstantial evidence tending to prove such negative as the record in this case discloses, but such presumption was relied on practically alone to establish such negative fact. This is especially true of the case of State v. Aiken, 109 Iowa, 643, 80 N. W. 1073, in which, among other things, the court said: "All that is disclosed by the evidence on this point is that the woman on whom the operation was performed went with her mother to· the office of the defendant, who is a doctor, and requested her to perform an abortion. The woman was advanced in pregnancy from five to six months, and the operation was successfully performed. There is no evidence of illicit intercourse, no showing as to whether she was married or unmarried, and nothing to indicate the condition of her health, except that she walked to the office of defendant two or three times. Surely this does not prove beyond a reasonable doubt that the miscarriage was necessary to save the life of the mother. And we are of the opinion that it does not make out even a prima facie case."

It can be said of the testimony in the case at bar, as was said by the Wisconsin court in Hatchard v. State, supra: "The irresistible inference from the testimony is that it was not necessary to destroy the child to preserve the life of the mother."

Finding no prejudicial error in the record, the order appealed from is affirmed.

MORGAN, C. J., not participating. SPALDING and CARMODY, JJ., concur.

ELLSWORTH, J. (dissenting). I dissent from the holdings of the majority of this court upon the two points last considered in their

opinion, and believe that error of the district court appears upon the record of a nature so serious and prejudicial to the rights of the defendant as to require the judgment of conviction in this case to be reversed and a new trial ordered.

A fair consideration of the testimony of the witness Olsen, as received upon the trial, discloses a disregard of elementary rules governing the introduction of evidence, with resultant prejudice to the rights of the defendant so great as of itself to warrant the reversal by this court of the judgment rendered. In a criminal prosecution of the gravity of that presented by this appeal, irregularities that would not be tolerated even in an action tried under the more flexible and elastic principles of civil procedure should not be treated as of little moment. The witness Olsen testified, in effect: That he was the official stenographer of the district court, and had taken in shorthand the testimony of the defendant, Longstreth, in a case in which the prosecutrix, Ida Wagner, was plaintiff, and said Longstreth defendant, tried in the district court at a former term; that he had his shorthand notes with him, and by refering to those notes could give Longstreth's testimony in that action; that he had correctly transcribed the testimony of Longstreth, and had heard it all; but that he could not give all the testimony of Longstreth independent of his notes. He thereupon produced his shorthand notes, and the state's attorney, without offering the same or a certified transcript thereof in evidence, asked the witness: "Q. I will ask you to refer to your notes in reference to said case tried at said time and place and read therefrom the testimony of Dr. W. E. Longstreth given in relation to his treatment of Ida Wagner on or about the 29th day of March, 1906, and especially with reference to his having performed an operation on her, and with reference to his having relieved her of a fetus," etc. Counsel for defendant objected to the question on the ground that the evidence called for was incompetent, irrelevant and immaterial, which objection the court overruled, and the witness then proceeded to read from his notes a mass of matter, proceeding by question and answer, at length so great as to cover two pages or more of the printed record, all of which referred to conversations and transactions between the defendant and prosecutrix during a period of several months, including the particulars of certain medical treatment of the prosecutrix, and the assertion that he had during the month of March,

1906, "relieved her of a fetal mass of the uterus." That the evidence thus introduced was of a character highly prejudicial to the defendant cannot be questioned, and the only theory upon which it could be held admissible was that it was in form and substance clearly competent and relevant under well-settled rules of evidence.

The stenographer of a district court of this state is not a public agent, and his shorthand minutes of a civil trial, however authenticated, do not become a public record. The district court, in criminal trials, may order, upon a certain showing, the preparation and certification of a transcript of these notes, and the filing thereof in the office of the clerk of the district court. This transcript is so filed and preserved, however, not for the benefit or information of the public generally, but only for that of the parties to the action or proceeding in which the notes were taken. "The information which they impart is not intrusted to the public, but aside from the prosecuting attorney, is confined to the parties directly interested." Smith v. State, 42 Neb. 356, 60 N. W. 585. It is therefore apparent beyond all question that neither under rules making competent a public record, or on any other principle, can the shorthand notes or a certified or authenticated transcript of the same be received as original evidence of any facts narrated therein. The majority opinion recognized and announced the true rule in this regard in the words: "If a certified transcript of the reporter's notes were offered in evidence as independent proof, of course, this would be prejudicial error." If neither the shorthand notes themselves nor a certified or authenticated transcript could be received or considered as independent proof of any fact, I cannot conceive or understand how these notes could be read before the jury by the reporter, or any one else, and their contents received as competent evidence. To allow this to be done is to so misapply a proper and salutary rule of evidence as to permit, in most objectionable form, the very mischief it is intended to prevent; nor is it clear how Olsen's statements preliminary to the reading of his notes in any manner rendered this method of proof more tolerable. It is possible that in those states in which, by statute, a stenographer's notes are considered a public record, his statements, made under oath that the notes were correctly taken, might be considered a sufficient authentication to warrant his reading them before the jury. Even in such a case, however, a much more certain and satisfactory way of introducing the evidence

would be by the preparation and offer of a certified transcript. This, when properly received, might then be read by the stenographer or by any other person who could read; or it could have been submitted to the jury and taken with them upon their retirement that they might read it themselves. It is conceded, however, that such use of a certified transcript would have been highly prejudicial to the rights of the defendant, and could not have been resorted to under any practice known to the courts of this state.

There is nothing in the record to warrant the assertion that Olsen "was asked and permitted to state the exact testimony of appellant upon such trial, and to do so it was necessary to refresh his memory by referring to such testimony as transcribed by him." This testimony had not been "transcribed" by him at all, and he was not asked to state "the exact testimony of appellant," but simply to read or translate a portion of his notes. Not even by inference can it be claimed that in reading these notes Olsen was stating, according to his best recollection, the exact statements made by the defendant, in his hearing, on the former trial. He had testified that he could not recollect these admissions entire as made by the defendant. It is the theory of counsel for the state that Olsen used the notes simply for the purpose of refreshing his memory; but he was neither asked to state nor stated that he so used them, and there is no basis other than conjecture for believing that he did. The substance of Olsen's testimony as given and received was simply that he had made shorthand notes of testimony given by the defendant upon the former trial, and that by "referring to" or in other words looking at these notes he received certain mental impressions which he translated into words. The superlatively important point of whether these words, when put together, reproduced correctly the admissions claimed to have been made by the defendant, was wholly ignored. Under such a method of proof, the penalties of perjury would not operate as a safeguard to the rights of the defendant against the damaging effect of a variance from the admissions actually made by him on the former trial of the statements read by Olsen from the notes. In translating his notes, Olsen became no more responsible for the truth of the statements read, as a faithful reproduction of the testimony of defendant, than would another witness, with skill to read his notes, who had not even been present at the former trial. Upon any view of his testimony, his statements in reference to

the defendant's admissions lack the positive directness that should characterize the sworn declarations of a witness who gives evidence so damaging against a party accused of crime.

A still more serious question is presented upon the point raised by appellant that the evidence offered by the state is insufficient to sustain a conviction. The case was tried on the theory that the state, in order to warrant a conviction of the defendant, must establish beyond a reasonable doubt three elements of the offense charged, to-wit: (1) That at the time the offense was committed the prosecutrix was pregnant with child; (2) that the defendant administered to her certain drugs, or used upon her body certain instruments, with intent to procure an abortion; and (3) that such abortion was not necessary to preserve the life of the prosecutrix. The district judge gave an instruction in these words: "The burden of proof rests upon the state to show that the production of the miscarriage, if any, was not necessary for the purpose of saving the mother's life, and this must be done beyond a reasonable doubt to your satisfaction. Such burden remains to the state, although no evidence is introduced to the contrary." There is no contention that this instruction was more favorable to the defendant than he was entitled to receive. On the other hand, it is apparent that throughout the trial the state assumed the burden of proving beyond a reasonable doubt, as an essential element of the offense charged, that the operation resulting in abortion was not necessary to save the life of the woman upon which it was performed. There is no doubt that in this instruction the district court announced the true rule of law in this behalf. Abortion in this state is purely a statutory crime, and prosecutions therefore must be brought strictly within the terms of the statute. The fact that the operation producing it is not necessary to save the life of the mother is an element as necessary to the proof of the offense as that the woman is pregnant, or that a miscarriage was produced by or through the procurement of the defendant. Each of these points, as every material element of a criminal charge, must be proved to the satisfaction of the jury beyond a reasonable doubt.

It appears from the evidence in this case that the defendant, Longstreth, at the time the crime is alleged to have been committed, was a physician in regular practice. It also appears that the prosecutrix stood in the relation of patient to him, and that he was treating her, at her request and with her consent, for some bodily

ailment. Therefore, in addition to the general presumption of innocence of the crime charged against him, there arises in his favor the further presumption that, if in his treatment of the woman, he caused an abortion, it was done in an honest effort on his part, as her physician, to preserve her life. "The experience of mankind shows that cases have often arisen in which such treatment has necessarily been resorted to, and in the absence of other proof the law, in its benignity, would presume that it was performed in good faith ,and for a legitimate purpose." State v. Clements, 15 Or. 237, 14 Pac. 410. I do not think that it is seriously urged that these two strong presumptions can be overborne by the counter-presumption that, the woman being in apparent health shortly before the time the abortion was performed, the operation was not necessary to preserve her life.

In the opinion of my associates the record does not present an entire absence of proof to support the allegation of the information that the operation was not necessary to preserve the life of the woman; and a number of facts are referred to, as, in their opinion, supplying prima facie proof upon this point. After the most careful examination of the entire record, however, with particular attention to the facts referred to in the majority opinion, I fail to find even the slightest evidence upon this point. In my view, unless proof of the fact may be supplied by presumption, there is an entire absence of proof. I cannot believe that it will ever be accepted as a holding of this court that a material element in a serious criminal charge can be supplied by presumption. If there was even slight evidence upon this point, or in fact any competent evidence on which a verdict of conviction may rest, I would feel that the conviction should be sustained as upon other material elements; the evidence whereof, while not wholly satisfying, being, I think, sufficient to sustain the verdict. But on the point that the operation was necessary to preserve the life of the woman, there is an utter and complete absence of evidence. The facts referred to in the majority opinion cannot, under the utmost stretch of legitimate construction, he said to even touch upon this point. The fact that the woman was unmarried, and that defendant had held illicit intercourse with her, may furnish evidence of a motive both on his part and hers for procuring an abortion. But that there may have been some evidence of a motive for causing an abortion does not supply even for slightest proof that such abortion was

not necessary to save the life of the woman; while in support of the contrary proposition stands the double presumption that the defendant was not wilfully guilty of a crime, and that his professional acts were directed to a legitimate purpose.

It cannot be said that knowledge of the facts constituting this element of the offense are peculiarly within the mind of the defendant. The state, by means that will readily suggest themselves to the mind of any skillful attorney, can as readily and as conveniently prove that the operation was not necessary to preserve the life of the woman as it can establish any other element of the offense. "The circumstances attending the procurement of an abortion, tending to prove that it was unnecessary for the purpose of preserving the life of the mother, ordinarily can be shown quite as easily on the part of the prosecution as it can be proved by the defendant that it was necessary for that purpose." Moody v. State, 17 Ohio St. 110. The supreme Court of Iowa has held that evidence much stronger upon the point in question than that introduced in this case "does not make out a prima facie case" of statutory abortion. Under the evidence in case the prosecutrix walked repeatedly to the office of the physician in order to have the operation performed. The court says: "It is a matter of common knowledge that many persons walk to hospitals and to offices to have operations performed that are necessary to save life. Every presumption is in favor of defendant's innocence, and, if the facts shown are capable of explanation on any reasonable hypothesis in favor of innocence, there can be no rightful conviction." State v. Aitken, 109 Iowa, 643, 80 N. W. 1073. In this case the prosecutrix, at the time the abortion is supposed to have been performed, was confined to her bed and sent a friend to the physician, asking him to come to her room. The fact that the person performing the operation in the Iowa case might not have had the same motive for procuring an abortion as the defendant does not, in my opinion of this case, differentiate it in any degree whatever upon the point of the necessity for the operation. The ruling in the Iowa case is supported by a very respectable array of authority. State v. Schuerman, 70 Mo. App. 518; State v. Clements, 15 Or. 237, 14 Pac. 410; State v. Moody, 17 Ohio. St. 110. When, therefore, it is established "that by the great weight of authority the state must both allege and prove such negative," as stated in the major-

ity opinion, I cannot understand how in this case it can be said to have relieved itself of that burden. .

I do not feel, in view of the serious irregularities occurring upon this trial, that the proof necessary to conviction should receive support from any "irresistible inference from the testimony" on the part of this court, in substantiation of any or all of the elements of the offense charged. The crucial question that should be given the undivided attention of this court is whether or not the defendant has been accorded his constitutional right of a fair and impartial trial; and, if he has not, a new trial should be ordered even though incidentally, in the course of the investigation, each member of this court has received impressions so strong as to satisfy his mind of defendant's guilt. Such fair and impartial trial, according to the rules of criminal procedure, in my mind the defendant has not had; and in this view of the case it would be idle to theorize upon the point of the abstract justice of his conviction.