[File No. Cr. 142.]

STATE OF NORTH DAKOTA, Respondent, v. JAMES N. CAMPBELL, Appellant.

(274 N. W. 844.)

582

Opinion filed June 23, 1937.   Rehearing denied September 20, 1937.

*E. R. Sinkler* and *G. O. Brekke,* for appellant.

*P. O. Sathre,* Attorney General, *Milton K. Higgins,* Assistant Attorney General and *A. O. Haugerud,* State's Attorney, for respondent.

BURR, J.   The defendant was convicted of the crime of uttering a forged instrument.  He appeals from the judgment entered thereon and from the order denying a new trial, and we deal with but three of the specifications of error.

The information denominated the instrument an "Assignment of Contract," but in a later section specifically termed it a "Contract for Deed," set it forth verbatim, and charged that "said J. N. Campbell did wilfully, unlawfully, fraudulently and feloniously and with intent to defraud another thereby falsely utter and publish as true, *said* forged instrument by then and there, knowing said instrument to be falsely made and forged, presenting the same to be recorded in the office of the register of deeds of Mountrail county, North Dakota, and causing same to be recorded in Book 253 on page 484 thereof."

In opening the case the state, over the objection of the defendant, was permitted to amend by striking out the words "Assignment of" where they appear.

There was no new verification thereof nor an arraignment thereunder.   Defendant claims this was an amendment in substance and the jury was in fact informed the defendant was charged with two crimes.

The information is tested by the facts which are said to constitute the crime and the description of the instrument said to have been uttered.   The charging part shows specifically the defendant is charged with uttering a forged contract.   The error of naming it an assignment was one of form rather than of substance.   The court may permit amendment under § 10,633, Compiled Laws, which provides: "The information may be amended at any time thereafter (after

plea) or during the trial as to all matters of form, at the discretion of the court, when the same can be done without prejudice to the rights of the defendant. No amendment must cause any delay of the trial unless for good cause shown by affidavit."

There is nothing in the statement of the pleader which intimated to the jury "there was another action pending against the same defendant," and the rights of the defendant were not prejudiced. The court exercised a legal discretion in permitting the amendment without requiring a reverification and committed no error thereby.

An action of some kind had been commenced against the defendant by Mrs. Lillian Snyder. Prior to the trial of said action the defendant was subpœnaed for examination on January 15, 1936 under §§ 7863 and 7864 of the Compiled Laws, which provide:

"A party to an action, . . . may be examined as a witness at the instance of an adverse party . . . and for that purpose may be compelled in the same manner and subject to the same rules of examination as any other witness to testify. . . ." (§ 7863).

"The examination instead of being had at the trial . . . may be had at any time before the trial at the option of the party claiming it before a judge of the court . . ." (§ 7864).

The defendant appeared before the judge of the district court without counsel and was cross-examined by C. M. Cottingham, the attorney for Mrs. Snyder, and by the judge, his testimony being taken by Ella Van Berkom.

On January 24, 1936, the state's attorney filed with the district judge, as committing magistrate, a criminal complaint charging the defendant with uttering a forged instrument by causing this contract to be recorded. The judge issued a warrant of arrest, the defendant was brought before him as committing magistrate, held to answer to the district court, and admitted to bail.

The defendant rested his case on the testimony introduced by the state. The testimony of Mr. Cottingham as to what the defendant said at this hearing for discovery and the testimony of Miss Van Berkom as to the questions asked Campbell and his answers were introduced at this trial over the objection of the defendant.

According to the discovery record Campbell said Mrs. Snyder, who lived in Illinois, listed land with him for sale; that on Septem-

ber 27, 1927 he had made a deal with John Severson whereby Severson ostensibly bought the land from Mrs. Snyder—but in fact for Campbell, to enable Campbell to collect a commission of fifty dollars, which commission was never paid; that Severson signed the original contract and acknowledged it before Campbell; that Campbell made a "copy," sent it with the "original" to Mrs. Snyder instructing her to keep the copy, sign the "original," and return it to him, which she did; that Severson never signed the copy; that thereafter Campbell took possession of the land, cleared and broke a portion of it, sometimes rented it on shares, sometimes hired the work done, paid some taxes and made small payments to Mrs. Snyder; that in August, *1930,* Severson told him Mrs. Snyder was writing to him and he did not want anything further to do with it and so Campbell drew up an assignment to his wife for Severson to sign; Severson signed it and acknowledged it before Campbell on August 17, 1930, and Campbell wrote to Mrs. Snyder telling her, "I told her I had taken over an assignment of the contract of the land and that henceforth I would deal with her. Mr. Severson would have nothing more to do with the land;" and Mrs. Snyder answered him by Exhibit B; that during the year 1933 he wrote to Mrs. Snyder offering her $800 for the title to the land, explaining to her at that time he would make a loan through the Federal Land Bank for the money and she replied, accepting his offer; that no definite time for the completion of the loan was stated by either of them; that this deal fell through, but he always supposed he had an interest in the land and therefore put the deed and assignment on record on December 30, *1935;* that thereafter they were returned to him, left on his desk, and later disappeared, probably destroyed by his three-months old dog who was in his office and chewed up and destroyed a large number of papers and letters which were so badly damaged that they were swept up and the débris thrown away. There are other portions of this record which are involved and will be referred to later.

Severson testified that he never signed the contract nor the assignment, never acknowledged the signature, and never knew there was any such contract claimed until the "early part of January" 1936, though he had driven with the defendant to the farm four or five times before he received a letter from Mrs. Snyder, Exhibit 2,

dated September 23, *1929,* stating Campbell had sold him land in September 1927 and she had received no money. He considered she was "gently dunning" him. He immediately went to see Campbell and told him "this was the second time" he had caught him using his name and he would have to cease; that Campbell said he had forgotten to tell him he had used his name but " he would fix it up and tell the lady" that Severson had nothing to do with the land and never heard from the woman again.

The state contends that the jury believed Severson's signature was forged and so must have been forged by Campbell; that when Campbell had the contract recorded he knew he was recording a forged instrument and uttered it with the intention of defrauding some unnamed person.

The theory upon which the witness Van Berkom was permitted to read her notes of the testimony of Campbell at the hearing for discovery was that they contained admissions of guilt. They were not admissible in this case for any other purpose. State v. Longstreth, 19 N. D. 268, 276, 121 N. W. 1114, Ann. Cas. 1912D, 1317. Nowhere did she state that the notes were taken truly and correctly, that she was reading them correctly, or that they refreshed her memory. When she began reading the objection was made "That it is incompetent, irrelevant and immaterial. No foundation laid, asking for a conclusion of the witness. Not tending to prove any issues in this case, and improper. That there was no foundation laid particularly. I think that is all."

Waiving part of the objection on the theory that the specific features of lack of foundation were not called to the attention of the court, and also waiving consideration of the question of whether the testimony was admissible at all because of the fact that Campbell was compelled to come into court and testify without being warned that his testimony could be used against him the record not showing affirmatively he waived his constitutional right not to be compelled to testify against himself it is clear the record contains a great deal of matter not only utterly foreign to this trial, but highly prejudicial to the defendant's case. We can not set forth all of the testimony but cite sufficient to indicate this. By stipulation it was agreed that

the objection made should stand to all of the record and all of the questions.

At this hearing for discovery an exhibit of some kind was presented to the defendant and he was asked if the signature there was Severson's and he said "No;" but there is nothing to show what this exhibit is or what connection it has with the case. Judging by the context, it may have been Exhibit 1, the certified copy of the contract as furnished by the register of deeds. It may have been the copy of the contract sent to Mrs. Snyder, as, on examination by the court, he was asked, "Is that the paper you sent to Mrs. Snyder?" and he answered, "It is;" but that is followed immediately by the question, "And Exhibit 1 is one you sent her?" and he answered, "Yes." However Exhibit 1 is the certified copy furnished by the register of deeds. Clearly it was not the contract which the defendant said Severson signed. He admitted he signed the name Severson to the copies, but he was not charged with forging the signature to the copies. He was examined as to an assignment of the contract to ascertain whether he had forged Severson's name to it. He was asked if he thought it was a crime to have the land bought in Severson's name; if he thought that anyone could "get him" for it; whether he had studied law and knew "quite a bit about law." He was asked, "Nobody got you for it?" "Do you expect the court to believe the dog destroyed the instruments" after they were recorded; "Why did you destroy the contract and assignment as soon as you recorded them?" All of these questions and his answers were read, over the objection of the defendant, together with his testimony in regard to the land broken, what he spent for the removal of stone, to whom he rented the land, the share that he got from it, what he did with the proceeds, in fact all the testimony of his acts from the time he sold the land to Severson to the time of hearing.

We are satisfied the court was in error in permitting the introduction of the entire record and this error was extremely prejudicial to the defendant.

On the trial of this case the defense cross-examined Mr. Cottingham, who testified, among other things, that at the hearing for discovery the defendant had exhibited to him a letter, or copy of a

letter, which he claimed to have written to Mrs. Snyder on or about August 17, *1930,* which stated:

"This is to let you know that I have taken over an assignment of the Severson land contract with you, so Severson has nothing more to do with the place. I don't know just what I shall be able to do with the payments this fall. When the grain has been threshed and expenses paid I shall send you as large a payment as possible. The crops are not turning out very good and prices are too low, but later on, after the grain is sold I shall remit to you as much as possible."

Later he seemed somewhat doubtful as to when he saw this letter. On cross-examination Exhibit B, a letter from Mrs. Snyder dated November 24, 1930, was introduced, stating:

"Received your letter dated August 17–1930 notifying me you have taken over an assignment of the Severson land contract with me. You say Mr. Severson has nothing more to do with the place. I have no papers against you in regard to the payments. My agreement with you was, you was to collect the payments for me. So far you have not done it; you agreed last summer when I was up there to send me a payment as soon as threshing was done. I have waited this long and as yet I have not received a cent. Interest and principals are due Dec. 1st. I am trusting you will deal with me in a business like manner and do as you agreed with me. I expected a payment before this time, by what you told me when I was up there. I want to hear from you in regard to this."

The record shows Mrs. Snyder never dealt with Severson, and more than five years before the contract was recorded she knew defendant claimed Severson was out. Owing to failure to receive payment under the contract she made a deal with the defendant whereby she sold the land to the defendant for $800, which she knew was to be raised by a loan on the land for that amount. So far as the record shows, Mrs. Snyder may have been aware of the contention of Severson that he had never signed the contract and ratified the whole transaction. Her lawsuit may have been to recover the purchase price of $800. Apparently it had to do with the land. There is no testimony either way on these matters. What became of the lawsuit we do not know. Cottingham testified that at the discovery hearing Campbell stated he had "explained to Mrs. Snyder that in fact the

land was being sold to me;" and "I gave her to understand that the land was placed in Severson's name so that I could obtain $50 commission if I could sell the land." Mrs. Snyder does not deny this. Her name was endorsed on the information as a witness, but she was not produced and no reason shown for not calling her. It is important to know whether defendant intended to defraud her when the instrument was recorded.

The defendant was informed against under § 9906 of the Compiled Laws, which provides:

"Every person who, with intent to defraud, utters or publishes as true, any forged . . . instrument, . . . knowing such instrument . . . to be forged . . . is guilty of forgery in the same degree as if he had forged . . . the instrument : . . . so uttered. . . ."

On his cross-examination Mr. Cottingham testified that he had no independent recollection of whether the letter to Mrs. Snyder exhibited to him was the original; that he might have the original letter in his possession as Mrs. Snyder had sent him a sheaf of letters received from Campbell, and asked counsel for the defendant if the letter he was shown was the original. He was told the defendant did not have the original, "You have that original letter yourself . . . ," and the witness said he thought he had it and would look it up. All this testimony was received without objection.

Clearly the letter Exhibit B was an answer to Campbell's letter.

After the state had made its opening argument to the jury, and while the defendant's counsel, in arguing the case to the jury, was discussing this letter of Campbell to Mrs. Snyder, counsel for the state moved the court to strike from the record all the testimony of Mr. Cottingham with reference to this letter and its contents. The defendant objected to the striking out of the testimony on the ground that "the case was closed and the argument commenced and the defendant relied on the fact that the letter was in the record and that Mr. Cottingham testified to the letter." The court granted the motion stating that he had admitted the letter "on the strength of counsel's statement that it was a part of the examination before Judge Lowe. It does not now appear to have been such a part. Therefore

the Court will grant the motion of the State but will permit the defendant to reopen the case."

The defendant declined to reopen the case.

While the defendant is not charged with forgery, yet before he can be convicted of the crime charged it is necessary for the state to prove that the contract for deed was forged, and that Campbell, knowing it to be forged, uttered the instrument with an intent to defraud. This intent is an essential ingredient. State v. Murphy, 17 N. D. 48, 53, 115 N. W. 84, 17 L.R.A.(N.S.) 609, 16 Ann. Cas. 1133.

There is evidence in the record from which the jury could find that the instrument was forged. Placing a forged deed on record is sufficient uttering. See People v. Baker, 100 Cal. 188, 34 P. 649, 38 Am. St. Rep. 276; People v. Swetland, 77 Mich. 53, 43 N. W. 779; Abston v. State, 134 Tenn. 604, 185 S. W. 706, 707.

The court was in error in ruling that this letter was not "part of the examination before Judge Lowe." The notes of Miss Van Berkom show that the defendant referred to the letter and quoted its tenor. In addition, the witness Cottingham testifies that the letter was exhibited to him on that examination. Because Miss Van Berkom's record failed to contain what Cottingham said did not justify the striking out of the letter. It was a matter for the jury to determine whether she took the testimony accurately or whether Cottingham was correct.

The letter had a bearing on the question of intent to deceive. The "uttering" was not done until December 30, 1935, more than five years after the letter was written and the answer, Exhibit B, received.

There was error in striking out the letter because it was received without objection and the State could not sit by and permit testimony to be introduced without objection and then move to strike it out. Hogen v. Klabo, 13 N. D. 319, 100 N. W. 847. Neither could the state be permitted to have the evidence stricken out after the trial was closed. Yetzer v. Young, 3 S. D. 263, 52 N. W. 1054. All error is not prejudicial; but one of the essential elements of the crime which the State was required to prove beyond a reasonable doubt was that at the time the defendant had the contract for deed recorded he intended to defraud somebody. The discovery shows the defendant claimed a subsequent contract with Mrs. Snyder for the sale of the

land and negotiations with the Federal Land Bank to finance the deal. He explained he had the contract for deed put on record in order to facilitate these transactions. For five years Mrs. Snyder had been dealing with him as the purchaser. It was incumbent upon the State to prove the defendant intended to defraud someone. There is nothing to show an attempt to defraud the Federal Land Bank nor that any person could be defrauded other than the bank or Mrs. Snyder. He could not intend to deceive her if he had explained matters beforehand as Cottingham's testimony indicates. He had no formal contract in writing with her. The only way he could show an interest in the land was through those papers recorded. If satisfactory to her no one was defrauded. This letter to Mrs. Snyder was in the record, and the jury was entitled to consider it in determining whether the defendant had an intent to defraud at the time the contract was recorded. It was prejudicial error to strike out the testimony.

The other matters alleged as error will not likely occur on a new trial. For the reasons set forth the order denying a new trial is reversed.

CHRISTIANSON, Ch. J., and NUESSLE, and MORRIS, JJ., concur.