BELLE HOWARD

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 17, 1900—Rehearing denied June 7, 1900.*

1. INDICTMENT—*effect of omitting words "thereby" and "then and there."* Under section 6 of division 11 of the Criminal Code, concerning the sufficiency of indictments, the omission of the word "thereby" from the allegation "with intent then and there to produce a mis-carriage," and of the words "then and there" from the allegation "did thereby unlawfully * * * produce a miscarriage," is not a fatal defect.

2. EVIDENCE—*what sufficient to authorize putting of hypothetical question.* The court may permit a hypothetical question to be put to an expert witness if there is evidence tending to prove each of the facts stated in the question upon which the opinion of the wit-ness is asked, since to require the court to determine in advance whether the question embraced all the facts would be an invasion of the province of the jury.

3. SAME—*when statements by injured person are not competent.* Dec-larations of an injured person as to when and by whom she was in-jured (if neither dying declarations nor a part of the *res gestæ*) are not competent to prove the innocence of one charged with inflict-ing the injury, since, if competent to prove innocence, they would be competent to prove guilt.

4. ABORTION—*one charged with murder in producing abortion may be convicted of manslaughter.* Under section 3 of division 1 of the Crimi-nal Code, declaring that if the death of the "mother" results from an abortion the person producing it shall be guilty of murder, one charged with murder in producing an abortion upon "a woman pregnant with child" may be convicted of manslaughter, since the greater crime includes the lesser, and the word "mother" as so used means a woman pregnant with child.

5. The court reviews the evidence and declines to disturb the verdict finding the plaintiff in error guilty of manslaughter.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

ISAAC C. EDWARDS, and FRANK J. QUINN, for plaintiff in error:

No count charges in apt language either the crime of murder or manslaughter. No count sufficiently joins the

intent and overt act. The criminal intent and overt act must unite. *Slattery* v. *People*, 76 Ill. 217; *United States* v. *Riddle*, 5 Cranch, 311; *State* v. *Hollynay*, 41 Iowa, 200; *State* v. *Wilson*, 30 Conn. 500.

The intent and overt act must concur in point of time. *United States* v. *Fox*, 95 U. S. 670; *Clements* v. *State*, 50 Ala. 117; 4 Blackstone's Com. 21.

The weapon or instrument must be alleged to have been used with intent "thereby" to cause the injury. *Jones* v. *State*, 21 Tex. App. 349; *Anonymous*, 2 Hayw. (N. C.) 140; *People* v. *Aro*, 5 Cal. 208; *Williams* v. *State*, 19 Tex. App. 409.

The time and place of the infliction of the cause of death, and the death, should be set forth. *Commonwealth* v. *Hunt*, 45 Mass. 111; *People* v. *Wallace*, 9 Cal. 30; *People* v. *Cox*, id. 32; *Chapman* v. *People*, 59 Mich. 357; *State* v. *Lakey*, 65 Mo. 217; *Reggs* v. *State*, 26 Miss. 51; *State* v. *Parker*, 43 N. H. 83.

When life and liberty are at stake, every circumstance connected with the alleged crime, and which may tend to excuse or palliate the conduct of the party charged or explain the motives, should be submitted to the jury. *Williams* v. *People*, 54 Ill. 422; *Comfort* v. *People*, 54 id. 404; *Balkburn* v. *State*, 23 Ohio St. 146; *Siebert* v. *People*, 143 Ill. 511; *Railway Co.* v. *Sutton*, 42 id. 438; *Jones* v. *People*, 166 id. 264; *Cook* v. *People*, 177 id. 146.

The defense has a right to show the conversations between the parties a short time before the offense, even if the State introduced no evidence of the conversations. *Foster* v. *State*, 8 Tex. App. 248; *Mack* v. *State*, 48 Wis. 271.

A self-serving declaration is admissible when part of *res gestæ*. *State* v. *Walker*, 77 Me. 488; *United States* v. *Craig*, 4 Wash. C. C. 729; *State* v. *Crank*, 2 Bail. 66.

Representations made by a sick person to a medical attendant as to his symptoms are competent. *Johnson* v. *State*, 17 Ala. 618.

Evidence of other injuries is competent. *State* v. *Harris*, 63 N. C. 1.

A verdict for manslaughter cannot be based upon the allegation in the indictment.

E. C. AKIN, Attorney General, JOHN DAILEY, State's Attorney, (JOSEPH A. WEIL, and E. U. HENRY, of counsel,) for the People:

In the following cases the sufficiency of indictments for burglary was before the Supreme Court, and the word "thereby" was not used to qualify the intent: *Lyons* v. *People*, 68 Ill. 271; *Brennan* v. *People*, 110 id. 535; *Kincaid* v. *People*, 139 id. 213; *Watson* v. *People*, 134 id. 374; *Gillock* v. *People*, 171 id. 307. Why not necessary so to qualify any intent in an assault with intent to commit rape, (*Porter* v. *People*, 158 Ill. 370,) or assault with a deadly weapon, or assault to kill? *Allen* v. *People*, 82 Ill. 610; *Hamilton* v. *People*, 113 id. 34; *Myers* v. *People*, 156 id. 126.

Declarations are not admissible if they amount to no more than a mere narration of a past occurrence. 2 Jones on Evidence, sec. 348.

Declarations of a party to his physicians or to other persons as to the cause of the injury are not admissible when not made at the time of the injury. 2 Jones on Evidence, sec. 352, p. 782; *Railway Co.* v. *Sutton*, 42 Ill. 438; *Collins* v. *Waters*, 53 id. 485.

Declarations, to become a part of the *res gestæ*, must be contemporaneous with the principal fact sought to be proved. *Hayes* v. *State*, 40 Md. 635.

Under an indictment for murder by abortion a conviction for manslaughter will be sustained. *Earll* v. *People*, 73 Ill. 329.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the September term, 1899, of the circuit court of Peoria county, the plaintiff in error was convicted of the crime of manslaughter and sentenced to the penitentiary for an indefinite term, to reverse which judgment she prosecutes this writ of error.

The indictment, consisting of six counts, charged her with the crime of murder in causing the death of Etta Binkley, in violation of section 3 of the Criminal Code, fixing the penalty for the crime of producing an abortion.

Before the arraignment, counsel for defendant entered their motion to quash the indictment and each count thereof, which was overruled, and this ruling is the first assignment of error insisted upon. It is conceded that if there is any good count in the indictment upon which the conviction can be properly based the judgment below should not be disturbed although other counts might be held bad. It is also conceded upon the part of the People that under the evidence the verdict of the jury can only be sustained under the first or second count. It is only necessary, therefore, under this assignment of error, to consider these counts.

The first count alleges "that Belle Howard, *alias* Belle Shotwell, and Fred Patee, late of the said county, on the second day of April, in the year of our Lord one thousand eight hundred and ninety-eight, at and within the county aforesaid, did unlawfully, feloniously and willfully use a certain instrument to the grand jurors aforesaid unknown, by then and there forcing, thrusting and inserting the said instrument into the womb and private parts of one Etta Binkley, to-wit, Hughretta Binkley, then and there being a woman pregnant with child, and in the peace of the People, with intent then and there to produce the miscarriage of the said Etta Binkley, to-wit, Hughretta Binkley, and did thereby unlawfully, feloniously and willfully, with malice aforethought, cause the miscarriage of said Etta Binkley, to-wit, Hughretta Binkley, it not being then and there necessary to cause such miscarriage for the preservation of the life of the said Etta Binkley, to-wit, Hughretta Binkley, the said Belle Howard, *alias* Belle Shotwell, and Fred Patee, then and there well knowing the use of said instrument as afore-

said, at the time aforesaid, in the manner aforesaid, would produce such miscarriage, by reason whereof the said Etta Binkley, to-wit, Hughretta Binkley, from the second day of April aforesaid, in the year aforesaid, did languish, and languishing did live to the 19th day of April in the year aforesaid, on which 19th day of April aforesaid, in the year aforesaid, said Etta Binkley, to-wit, Hughretta Binkley, died, contrary to the form of the statute," etc.

It is insisted this count is fatally defective, because in the allegation, "with intent then and there to produce the miscarriage of the said Etta Binkley," the word "thereby" does not follow "then and there," the position of counsel being, that the charge should have been with intent, etc., "thereby" to procure the miscarriage. Forms of indictments are to be found to that effect, and the decisions of some courts go to the extent of holding that the use of the word here omitted is necessary, but no such rule exists in this State. It is further objected that in the next averment, "and did thereby unlawfully * * * cause the miscarriage of said Etta Binkley," the words "then and there" should have followed the word "thereby," the contention here being, that without the omitted words there is no sufficient charge as to the county or State in which the miscarriage was produced and the death occurred. This position is also unsound. Taken in connection with the preceding averments, the time and place of causing the abortion and the death of the deceased sufficiently appear. Section 6 of division 11, chapter 38, of the Revised Statutes, providing that every indictment which charges the offense so plainly that the nature of the offense may be easily understood by the jury, was intended to and does meet each of the foregoing objections to the first count. It is a copy of a similar indictment held good in *Beasley* v. *People*, 89 Ill. 571. The motion to quash it was properly overruled. The evidence being applicable to this count, it is unnecessary to consider the criticisms made upon the second.

The errors alleged to have been committed upon the trial are the rulings of the court in the admission and exclusion of testimony, and the giving of instructions to the jury on behalf of the People.

Etta Binkley, an unmarried woman about thirty-five years of age, was employed by the Patee Bicycle Company, in the city of Peoria, as a stenographer and type-writer, and performed those duties from about Christmas, 1897, until the evening of April 1, 1898. While thus employed she lived at the boarding house of George H. Lilly, occupying a room with his grown daughter. At the noon hour of the first day of April she called at the residence of the defendant, who was a practicing physician, having an office in her residence, about four squares from the Lilly boarding house, and there met the defendant and had a short conversation with her. Up to the time she quit work she had performed her duties each working day, to all outward appearances being in normal health. On the morning of the second of April, about half-past six o'clock, she again went to the house of defendant and was admitted by her and directed to a room on the second floor. Soon after, defendant sent her breakfast to the room. The girl brought with her that morning a hand-bag, containing a night dress, wrapper, a fountain syringe and a bottle containing about two ounces of ergot. One Ida Kennedy was then employed as a professional nurse by the defendant, and it appears, both from her testimony and that of the defendant herself, that about ten o'clock in the forenoon of that day the deceased went to the office on the first floor, where she remained alone with the defendant from twenty to thirty minutes and then returned to her room in care of the nurse. She suffered from hemorrhage of the private parts and gave evidence of pain. Prior to four or five o'clock in the afternoon the defendant visited her in her room, and soon after again called her to the office, where

she remained alone with defendant some twenty or thirty minutes. The nurse was then called and accompanied her to her room. She testifies that soon after returning to the room her pulse increased, and she experienced a copious discharge of blood and water. She remained in the house, being visited frequently by the defendant and attended by the nurse, until the following Saturday evening, April 9, when the defendant took her in a buggy back to the boarding house and left her alone on the porch, where Mr. Lilly found her as he was closing the doors previous to retiring, and describes her as being in a very helpless and distressed condition. He admitted her into the house, where she remained during the night, occupying the same room and bed with Miss Lilly. The next morning, Sunday, April 10, about nine o'clock, she went to the Cottage Hospital, four or five blocks distant, where she was received and immediately put to bed. A member of the medical staff, Dr. Otho B. Will, was immediately summoned. He describes her condition at that time as "trembling, breathing rapidly, pulse 140 per minute, temperature a fraction over 102; she was vomiting about once in every three minutes." From a further examination, followed by an operation, he discovered that a miscarriage had taken place, a portion of the placenta still remaining in the womb in a decayed condition, producing pus and a disagreeable odor. She remained in the hospital, in the care of nurses, under Dr. Will's treatment, until the 19th of the same month, when she died from puerperal septicæmia. The body was removed to the home of her parents in Dublin, Indiana, and then buried. On the 23d it was exhumed and a post mortem examination made, which showed that death had resulted from an abortion. Dr. Will gave it as his opinion, from the growth of the placenta, that the pregnancy was of about four months' duration. Other testimony of physicians was to the effect that she had been pregnant from four to five months.

So far there is no material disagreement between the attorneys for the respective parties. It is conceded that an abortion had been produced upon the deceased and her death caused thereby. The evidence of the attending physician at the hospital, and that of those who made the post mortem examination, clearly established that fact, and as to the abortion having taken place the defendant testified: "From my examination of her she had aborted before she came to my house; she might have aborted forty-eight hours before, and it might have been longer." Other parts of her testimony are to the same effect, her treatment, as she says, being for conditions resulting from a miscarriage.

The controversy upon the trial was as to when and by whom the abortion was produced, the theory of the prosecution being that it was caused by the defendant, in her office, on the second day of April, while that of the defense was that it had been previously produced, either by the deceased herself or some third party by her procurement, and that all the defendant did after taking charge of her was to treat her for the consequences of the act. On this issue the prosecution, having introduced testimony as to the apparent condition of the health of the deceased prior to her going to the defendant's house and of her having performed her usual duties as stenographer and type-writer, put to certain physicians these hypothetical questions: "State whether or not in your judgment a woman who has had an abortion performed upon her, or had performed one upon herself, could attend to her regular duties and there would be nothing in her condition to show any illness to her friends and acquaintances; and state whether or not an abortion could have been performed upon Etta Binkley under these circumstances, she being from four to four and one-half months in pregnancy, and not be observed by her friends." These and similar questions were objected to by counsel for the defendant upon the ground that they did not em-

brace all the facts. The objection was overruled, the defendant excepted, and it is now insisted that the evidence was improperly admitted.

There was evidence tending to prove each of the facts stated in the hypothetical questions upon which the opinions of witnesses were asked, and that was all that was necessary. (Thompson on Trials, sec. 604, *et seq.*) Whether the facts stated in a hypothetical question are sufficiently established by the proof is to be decided by the jury. "The fact that a question is a hypothetical one implies that the truth of some statement of facts is assumed for a particular purpose, and if such a question could be based upon undisputed facts alone it would never be asked in any case where an issue of fact arose." (Underhill on Evidence, p. 272.) To require the court to determine in advance that questions so put embraced all the facts would be to take from the jury the weight to be given to the evidence. We think the court properly overruled the objection.

The nurse, Ida Kennedy, having been examined on behalf of the People, on her cross-examination was asked a number of questions to which objections were sustained as not being proper cross-examination, and this also is urged as reversible error. No good purpose would be served by following counsel in their extended argument upon the competency of these questions. Our examination of the testimony in chief, and the cross-interrogatories to which objections were sustained, has satisfied us that no substantial error was committed in that regard. The material facts sought to be proved by the cross-examination were subsequently given in evidence on behalf of the defendant in chief. At least she was not deprived of the benefit of any such facts offered to be proved.

The alleged error in the exclusion of evidence most earnestly relied upon is the refusal of the court to allow the defendant, and the nurse, Ida Kennedy, to state con-

versations with and statements made by the deceased. The questions all called for answers tending to prove but the two facts in controversy: when, and where and by whom, was the abortion produced. We have fully considered the argument of counsel in their contention that the statements of deceased were competent for any such purpose, and are clearly of the opinion that it cannot be sustained. The position leads to the inevitable conclusion that statements of an injured person as to when and by whom she was injured, (being neither dying declarations nor those made at or so near the time of the injury as to be a part of the *res gestæ,*) are competent to prove the innocence of one charged with having inflicted the injury, and if competent to prove innocence, equally so to prove guilt. Each of the declarations here sought to be put in evidence was clearly within the rule which excludes mere hearsay testimony. The authorities in support of this conclusion are numerous, many of which are cited in *Siebert* v. *People,* 143 Ill. 571.

It is again. assigned for error that the court improperly gave certain instructions to the jury at the request of counsel for the People. It is not, however, claimed that these instructions announced, in positive terms, erroneous rules of law, but that they were so drawn as to be misleading, to the prejudice of plaintiff in error. It may be conceded that some of them are more or less subject to criticism and should have been refused. Standing alone they might have misdirected the jury, though we think even that highly improbable. Every instruction asked on behalf of the defendant, twenty-one in number, was given, and they presented every feature of her defense, and announced the rules of law applicable thereto in the most favorable light to her. No one can read the entire series of instructions given to the jury as they appear in this record, and for a moment believe that the jury could have been misled thereby to the prejudice of the accused.

Another ground of reversal urged is that the court below erred in overruling defendant's motion in arrest of judgment, first, because a conviction of the crime of manslaughter could not be legally had under the indictment; and second, that the indictment itself was substantially defective. It is admitted that the first contention is contrary to the decision of this court in *Earll* v. *People*, 73 Ill. 329, but an attempt is made to avoid the force of that decision by pointing out certain differences in the language of the statute then in force and that of section 3, *supra.* We regard the language of the present statute as substantially the same as that of the former. The lesser crime, manslaughter, is included in the greater, murder. The word "mother," as used in section 3, means "a woman pregnant with child," and this we think so clear there can scarcely be two opinions upon the subject. The attempted argument on this point is entirely too technical and refined.

What we have already said as to the sufficiency of the first count of the indictment must dispose of the second ground of the motion in arrest.

It is finally insisted that the evidence produced upon the trial failed to sustain the verdict, and for that reason the motion for a new trial should have been sustained. Under this head it is asserted the evidence wholly fails to show that the abortion, if produced, was not done as necessary for the preservation of the mother's life. This contention is certainly made without due regard to the testimony. Not only the opinions of the physicians but the testimony of others as to the apparent healthy condition of Etta Binkley up to the time the abortion (by whomsoever committed) was produced, as well as her condition when she came under the treatment of defendant, testified to by the latter and the nurse and also as found by Dr. Will at the hospital, prove beyond a reasonable doubt that she had no other ailment than that which

resulted from the miscarriage. All this testimony is wholly unexplained and uncontradicted.

The other branch of this contention is, that the evidence failed to prove the defendant's guilt with that degree of certainty required by the rules of the criminal law,—and this we regard as the most important question raised in the case. We have endeavored to give it the most painstaking consideration. The unfortunate victim of the crime being dead, the prosecution was driven to rely upon circumstantial evidence to sustain the charge. There was testimony tending to show that when the deceased went to the house of defendant she was apparently well. She took with her articles of clothing indicating that she expected to remain there for a time and to be put under treatment. The conduct of the defendant in receiving her and immediately assigning her to a room, without conversation, strongly tends to prove that she went there by previous arrangement. The visits to the office during the day, as proved and not denied, afforded the defendant ample opportunity to commit the offense. The manner in which she subsequently removed her from her house, and the deplorable condition in which she left her alone at the boarding house, were acts inconsistent with her entire innocence. It is also in proof that about the time the deceased died, defendant left the State and remained absent until arrested and brought back on this charge. From the time she left her patient at the boarding house, almost dying, she manifested no interest or anxiety as to her welfare. As a physician she must have known that all the circumstances surrounding herself and the deceased were such as to cast suspicion upon her, and it is incompatible with her innocence that she should have taken no steps whatever to explain these circumstances or exculpate herself from suspicion. It is true, the evidence of Miss Lilly is to the effect that for two or three nights prior to the second of April the girl

was not in her usual health; that she had hemorrhages, which the witness presumed to be the result of her menstruation period. It also appears from the testimony of Ida Kennedy and the defendant that on the morning of the second of April, as she passed up the stairway to the room assigned her, drops of blood fell from her person on the carpet and matting, and this testimony, both of Miss Lilly and the nurse and defendant, is uncontradicted. Physicians were called to testify on behalf of defendant, who gave opinions to the effect that the miscarriage had taken place prior to these hemorrhages. The State offered the testimony of other physicians who stated that, although very unusual, women do menstruate during pregnancy, and it seems to be the theory of counsel that the hemorrhage observed by Miss Lilly, the nurse and the defendant on the morning of the second of April are explained in this manner. With that position we cannot agree. The extreme improbability of menstruation at her period of pregnancy, together with the fact that an abortion took place about that time, refutes to our minds the idea of those hemorrhages resulting from natural causes. We do not, however, think that it follows, from all the facts and circumstances in proof, that the miscarriage was produced prior to the time the deceased went to defendant's house, without any guilty knowledge or agency on the part of the defendant. The girl, in all probability, had, with or without the counsel of others, attempted to bring about the miscarriage, and the hemorrhages may have resulted from such attempts; but when all the facts and theories of physicians testified to (which necessarily are only theories or matters of opinion) are carefully weighed, it cannot be said that the jury were unwarranted in their conclusion that the defendant was guilty.

On the whole record there appears no reversible error, and the judgment of the circuit court must be affirmed.                    *Judgment affirmed.*