STATE *v.* H. N. MONTIFOIRE.

November Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed February 9, 1922.

*Criminal Abortion—Evidence—Accomplice—Burden of Proof—*
*Instructions to Jury—General Verdict When Information*
*Contains Several Counts.*

1.  Under G. L. 7013, providing punishment for one who wilfully ad-
    ministers or advises or causes to be administered anything to
    a woman pregnant, or supposed by him to be, or who employs
    or causes to be employed any means to procure the miscarriage
    of such woman, or assists or counsels therein, unless the same
    is necessary to preserve her life, all that need be shown to
    warrant a conviction is that the respondent purposely did some
    of the things prohibited intending thereby to procure the mis-
    carriage of a woman pregnant or supposed by him to be, and
    that such miscarriage was not necessary to save her life.

2.  In a prosecution under G. L. 7013, evidence that the size of the
    placenta showed that the alleged operation was not performed,
    and the fact that the woman had a fall that might have brought
    on the miscarriage did not cause a lack of proof of the *corpus
    delicti*, since the statute does not require an operation, or even
    a miscarriage.

3.  The respondent's knowledge of the pregnancy of the woman and
    the intent with which medicine was given her could be proved
    by circumstantial evidence.

4.  The one who was responsible for the woman's pregnancy, took her
    to defendant's office, and paid for an illegal operation was an
    accomplice, and his testimony was to be so considered.

5. The testimony of an accomplice does not have to be corroborated in order to sustain a conviction.

6. In a prosecution under G. L. 7013, the pregnant woman is regarded by the law as a victim, and not an accomplice.

7. In such a prosecution the burden is on the State to prove that a miscarriage was not necessary to preserve the life of the woman.

8. Evidence, that at the time of the operation, the woman was in good health, strong and robust, and was working as a telephone operator was sufficient proof that the operation was not necessary to preserve her life to take the case to the jury.

9. An exception to the submission of the case to the jury on all the counts of the information was too general to be availing on the ground that any particular count was not supported by the evidence.

10. Where an information contained counts charging the administering of tablets to a woman with intent to procure a miscarriage, and a count charging an abortion by an operation, even if the last count had been withdrawn from the jury's consideration, the evidence of the operation and miscarriage would have remained in the case, since the miscarriage was evidence of the woman's pregnancy at the time the tablets were administered, and the operation, if performed, was evidence of the respondent's knowledge of the pregnancy and the intent with which the tablets were administered.

11. An instruction that, if the respondent tried to produce a miscarriage, he was guilty "unless you should find from the evidence that it was necessary to do this in order to save her life," was erroneous as putting the burden on the defendant to show the necessity of an abortion and not on the State to negative such necessity, and a further instruction that "you must say on the evidence as you determine it whether the operation, if one was performed * * * was necessary in order to preserve the life of" the woman, did not cure the error.

12. The court's refusal to instruct the jury that they should accept the testimony of the respondent's accomplice with great caution was not error, since the rule invoked was only one of practice, and not of law.

13. Where only one crime is charged in an information, although charged in different counts as committed in different ways, a general verdict is proper.

INFORMATION in five counts for procuring an abortion, under G. L. 7013. Plea, not guilty. Trial by jury at the March Term, 1921, Franklin County, *Fish,* J., presiding. Verdict and judgment of guilty. The respondent excepted. The opinion states the case.

*C. G. Austin & Sons* and *Warren R. Austin* for the respondent.

*M. H. Alexander,* State's Attorney, for the State.

POWERS, J. Sometime in the summer of 1920 Sadie Warner, an unmarried girl eighteen years of age, established such relations with James Eaton, an unmarried youth twenty-four years of age, that she became pregnant. She promptly reported her condition to Eaton, who applied to the respondent, a practicing physician at St. Albans, to help the girl out of her trouble. He told the respondent of his relations with the girl and of her condition, and asked the respondent for some pills to "bring her around." This interview with the respondent was in the evening and about the first of December. The respondent thereupon made up a package of tablets, wrote directions thereon, and gave them to Eaton, who paid for them and took them to the girl. The latter took some of them without result. On the evening of December 12th, Eaton and the girl went to the respondent's office to get some more pills for the same purpose. The respondent then gave the girl another package of tablets, with directions for their use, and said if they did not help her to come back and he would "fix her up." Eaton paid the respondent for these tablets. They had no effect on the girl, and on the evening of December 20th, Eaton and the girl again went to the respondent's office, and the respondent performed an operation upon her, for which Eaton paid him twenty dollars, and which at once started menstruation, which continued until January 22, 1921, when the girl became most desperately ill and miscarried. Her attending physician, as a result of what she told him, summoned the respondent to the sanitarium to which she had been removed, and he came in haste. He was very nervous, and told the girl not to say anything about the operation, as it would get him into trouble.

All this was within the fair tendency of the State's evidence and came mostly from Eaton and the girl, both of whom were witnesses.

The respondent told a very different story. He admitted furnishing the tablets, but he said they were only for a cold and were given for nothing else. He admitted placing the girl upon an operating table, but he insisted that it was only for the purpose of making an examination to determine whether she was pregnant. He denied performing an operation, and stoutly maintained that all he did was to make the examination suggested. He testified that he steadfastly refused to do anything to bring on a miscarriage, and denied that he told her to say nothing about an operation. He was prosecuted and convicted under G. L. 7013.

At the close of the evidence, the respondent moved for a verdict, and when this motion was overruled he excepted. One of the grounds specified in this motion was, in effect, that the *corpus delicti* had not been proved.

[1]     The statute referred to defines the offence in very comprehensive terms. It provides that one "who wilfully administers or advises or causes to be administered anything to a woman pregnant, or supposed by such person to be pregnant, or employs or causes to be employed any means with intent to procure the miscarriage of such woman, or assists or counsels therein, unless the same is necessary to preserve her life," shall be punished as therein provided. G. L. 7013.

Under such a statute, it is not necessary to prove that the respondent manually administered the drug or thing in question; it is enough that he furnished it. *McCaughey* v. *State,* 156 Ind. 41, 59 N. E. 169. It is not necessary to show that the substance administered is of a noxious character, or that it possessed qualities efficient to produce a miscarriage (*Com.* v. *Morrison,* 16 Gray [Mass.] 224; *State* v. *Shaft,* 166 N. C. 407, 81 S. E. 932, Ann. Cas. 1916 C, 627), or that the woman took it (*Com.* v. *Morrison, supra*), or that she was actually pregnant (1 C. J. 312), or that a miscarriage resulted. *State* v. *Brown,* 3 Boyce (Del.) 499, 85 Atl. 797, *State* v. *Longstreth,* 19 N. D. 268, 121 N. W. 1114, Ann. Cas. 1912 D, 1317.

All that need be shown to warrant a conviction is that the respondent purposely did some of the things prohibited by the statute intending thereby to procure the miscarriage of a

woman pregnant or supposed by him to be, and that such miscarriage was not necessary to save her life.

[2-6]   The respondent makes much of the claim that the miscarriage of January 22d adds nothing to the proof against him, because the size of the placenta showed that the alleged operation was not performed, and the fact that the girl had a fall after December 20th that might have brought on the miscarriage.   Suppose this is so; it does not result in a lack of proof of the *corpus delicti.*   As we have seen, the statute does not require an operation or even a miscarriage.   If both are here rejected enough remains to sustain the conviction.   That this girl was pregnant at all times here material is abundantly established by the record.   The knowledge of the respondent of this condition and the intent with which the tablets were supplied could be proved by circumstantial evidence (*State* v. *Jones,* 4 Pennewill [Del.] 109, 53 Atl. 858), and in view of the testimony of Eaton and that of the girl it cannot be said that the State utterly failed on this branch of the case.   To be sure, Eaton was an accomplice of the respondent, and his testimony was to be considered in view of that fact.   But we have no rule of law requiring such testimony to be corroborated, in order to sustain a conviction.   *State* v. *Potter,* 42 Vt. 495; *State* v. *Dana,* 59 Vt. 614, 10 Atl. 727; *Taft* v. *Taft,* 80 Vt. 256, 67 Atl. 703, 130 A. S. R. 984, 12 Ann. Cas. 959.   And if we had, he was, in many important particulars, corroborated by the girl, who is regarded by the law as a victim and not an accomplice.   *State* v. *Smith,* 99 Ia. 26, 68 N. W. 428, 61 A. S. R. 219; *Com.* v. *Boynton,* 116 Mass. 343; *Com.* v. *Turner,* 224 Mass. 229, 112 N. E. 864.

[7-8]   That the excepting clause in the statute enters into the definition of the crime and presents an essential element of the offence must be admitted.   *State* v. *Stevenson,* 68 Vt. 529, 35 Atl. 470.   This being so, the burden was on the State to prove that in this case a miscarriage was not necessary to preserve the life of the girl.   *State* v. *Wells,* 35 Utah 400, 100 Pac. 681, 136 A. S. R. 1059, 19 Ann. Cas. 631; *State* v. *Brown,* 3 Boyce (Del.) 499, 85 Atl. 797; *State* v. *Shoemaker,* 157 Ia. 176, 138 N. W. 381; *State* v. *Longstreth,* 19 N. D. 268, 121 N. W. 1114, Ann. Cas. 1912 D, 1317; *State* v. *Lee,* 69 Conn. 186, 37 Atl. 75.   In the case last cited it was held that, inasmuch as the ability to bear children is the rule, and necessary abortions the rare exception, there is a presumption against the necessity therefor, which

answers the requirements of this rule until evidence of the necessity comes into the case, just as the presumption of sanity answers until evidence of insanity appears. There is much to be said in support of this view, but it is not necessary for us to accept or reject it now, for the record discloses enough evidence to make a *prima facie* case for the State on this point. The testimony was that this girl was in good health, strong and robust, and was working as a telephone operator. This made a jury question of it. *Howard* v. *People,* 185 Ill. 552, 57 N. E. 441; *State* v. *De Groat,* 259 Mo. 364, 168 S. W. 702.

[9, 10] We find no error in overruling the motion for a verdict. The most that the respondent could have claimed on the evidence was that the count charging an abortion by an operation should be withdrawn ·from the jury's consideration. This he did not ask. To be sure, he excepted "to the submission of the case to the jury on all of the grounds"; but, even if this ought to have been understood as an exception to the submission to the jury of all the *counts,* it was too general to be availing on the ground that any particular count was unsupported by evidence. If this count had been withdrawn the evidence of the operation and miscarriage would have remained in the case for consideration; for, the miscarriage was evidence of the girl's pregnancy at the time the tablets were supplied, and the operation, if performed, was evidence of the respondent's knowledge of the pregnancy and the intent with which the tablets were furnished. *Com.* v. *Corkin,* 136 Mass. 429; *People* v. *Seaman,* 107 Mich. 348, 65 N. W. 203, 61 A. S. R. 326; *Scott* v. *People,* 141 Ill. 195, 30 N. E. 329; *State* v. *Mandeville,* 88 N. J. Law 418, 96 Atl. 398; *Lamb* v. *State,* 66 Md. 285, 7 Atl. 399; *State* v. *Brown,* 3 Boyce (Del.) 499, 85 Atl. 797.

[11] The court charged the jury as follows: "If the doctor [respondent] tried to produce a miscarriage upon the body of this girl by the use of tablets or pills, or by the use of force, why he is guilty of this offence, unless you should find from the evidence that it was necessary to do this in order to save her life * * *." To this the respondent excepted on the ground that "the burden of proof is on the State to show beyond a reasonable doubt that the operation was not necessary to preserve her life. There is no burden on the defendant to show the contrary." The only other reference to this matter in the charge was in the following language: "Now in passing it is said that

the State has not proven that an operation was not necessary in order to preserve the life of Miss Warner. Well, the case is all before you, gentlemen, and that aspect of it is before you, and you must say on the evidence as you determine it whether the operation, if one was performed at the time the information charges it, on the 20th of December, was necessary in order to preserve the life of Miss Warner.''

The instruction first quoted, obviously put the burden of proof under the excepting clause of the statute on the respondent. This was error. As we have seen, the burden was on the State to negative the necessity of an abortion. The instruction last quoted does not affect the situation. It merely leaves it to the jury to say how the fact was, without reference to where the burden lay. The general instruction on the subject of the burden of proof was not sufficient to prevent the erroneous impression involved in the instruction excepted to having effect. The exceptor put his finger on the exact point and made clear the fault. The error was harmful and requires a reversal. In view of the reversal thus required, we need take no time with the motion to set aside the verdict which is predicted upon a situation which is not likely to arise in another trial.

[12]   The respondent excepted to the charge of the court on the subject of the credit to be given to Eaton's testimony, insisting that the jury should have been advised to accept it with great caution. But the rule invoked being only a rule of practice and not of law, a failure to comply with it is not error. *State* v. *Hier,* 78 Vt. 488, 63 Atl. 877.

[13]   There is no merit in the exception to the failure of the court to require the jury, if they found the respondent guilty, to specify the count on which they predicated their verdict. But one crime was charged in the information, though in the different counts it was charged as committed in different ways. In such cases a general verdict is proper. *State* v. *Bickford,* 28 N. D. 36, 147 N. W. 407, Ann. Cas. 1916 D, 140; *State* v. *Rounds,* 76 Me. 123.

*Judgment reversed, and cause remanded.*