**Clifford A. RICHMOND, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 10, 1963.

Rehearing Denied Sept. 27, 1963.

Howell W. Vincent, Joseph C. Healy, Covington, for appellant.

John B. Breckinridge, Atty. Gen., Joe Nagle, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Clifford A. Richmond appeals from a judgment imposing a sentence of 10-years' imprisonment and a fine of $500 pursuant to a verdict finding him guilty of the statutory offense of abortion, KRS 436.020(1).

The victim of the abortion, Thelma Mattia, died. The only testimony upon the trial tending to connect Richmond with the commission of the offense was that of John Coletta, Thelma's paramour. The trial court instructed the jury that a conviction cannot be had upon the uncorroborated testimony of an accomplice, but submitted to the jury the question of whether or not Coletta was an accomplice. Richmond's primary contention on this appeal is that Coletta was an accomplice as a matter of law and therefore the court should have directed a verdict of acquittal.

Coletta's testimony was that he and Thelma were residents of Ohio; they had engaged in intercourse as a result of which she had become pregnant; she desired an abortion; he had a previous acquaintanceship with Richmond; he took Thelma to Bromley, Kentucky, where they met Richmond in a cafe; he talked with Richmond alone, told him that Thelma wanted an abortion, and Richmond agreed to perform the abortion; Thelma then joined them and after further conversation they went to a house trailer owned by Richmond where Richmond, in one room, attempted to abort the girl while Coletta sat in an adjoining room; the girl paid Richmond $250; the first attempt was unsuccessful and about one week later Coletta again took Thelma to

Richmond's trailer where another attempt was made by Richmond to abort her, with Coletta remaining in the adjoining room. On this second occasion Thelma went into a coma. Coletta took her to a hospital where she died several days later, without having regained consciousness.

We think it is clear that under the standard test for determining whether a person is an accomplice, see Head v. Commonwealth, Ky., 310 S.W.2d 285, Coletta must be considered to have been an accomplice as a matter of law. He aided and abetted, advised and encouraged. So there is no escape from the conclusion that a conviction could not be had upon his uncorroborated testimony unless (1) by reason of the peculiarities of the offense of abortion it can be said that there is a distinction between aiding and abetting the *victim* and aiding and abetting the *perpetrator,* or (2) the statute can be construed as expressing a policy that a person who is in the category of an agent of the victim rather than an agent or associate of the perpetrator shall not be considered to be an accomplice *for the purpose of testifying.*

◼ The generally accepted view is that the woman upon whom an abortion is performed is not an accomplice; that she is a victim rather than an offender. See Peoples v. Commonwealth, 87 Ky. 487, 9 S.W. 509, 810; Annotation, 139 A.L.R. 993. This view most often has been based upon an interpretation of the particular abortion statute as neither in express terms nor by implication making submission to an abortion an offense. It could be argued, then, that merely advising, encouraging, aiding or abetting the woman in her submission to an abortion does not make one an accomplice to the statutory offense. Several cases have expressed that view. See Scott v. State, 10 Terry 251, 49 Del. 251, 113 A.2d 880; People v. McGonegal, 136 N.Y. 62, 32 N.E. 616; People v. Alvarez, 73 Cal.App.2d 528, 166 P.2d 896; State v. Rowley, 216 Iowa 140, 248 N.W. 340. However, the line of distinction becomes exceedingly thin

when the person seeks out the abortionist, procures his agreement to perform the operation, and sets up the arrangements. In most cases involving such participation the person has been held to be an accomplice as a matter of law. See Hammett v. State, 84 Tex.Cr.R. 635, 209 S.W. 661, 4 A.L.R. 347; People v. Wilson, 25 Cal.2d 341, 153 P.2d 720; State v. Montifoire, 95 Vt. 508, 116 A. 77; Scott v. State, 10 Terry 401, 49 Del. 401, 117 A.2d 831.

◼ If the actions of the person sought to be classified as an accomplice consist primarily of providing companionship or comfort for the pregnant woman, perhaps a compassionate interpretation of the law would permit a conclusion that he has merely participated in acquiescence in the crime rather than in its commission, even though the participation included the furnishing of transportation to the place. But if he had gone so far as to seek out the abortionist, procure his agreement to perform the operation, and set up the arrangements, we do not see how it reasonably can be said that he has not aided and abetted in the commission of the crime. We can find no basis in the law for a holding that in order to be an accomplice in an abortion the person must be an associate or agent of the abortionist or that his interests must be on the side of the abortionist rather than of the pregnant woman.

We think the fact that Coletta had a direct personal interest in the abortion's being performed, since he would have been responsible for support of the child, must be weighed in the balance on the side of his being considered an accomplice.

Our abortion statute, KRS 436.020, states that "for the purpose of testifying" the woman on whom the abortion is performed shall not be considered an accomplice. This indicates that the legislature has recognized the difficulty of obtaining proof of guilt in abortion cases, and evinces a policy to limit, in abortion cases, the application of the rule requiring corroboration of an accomplice. The same practical considerations that in-

duced the legislature to authorize a conviction on the uncorroborated testimony of the woman would suggest that the testimony of an associate or agent of the woman likewise should not require corroboration, at least in cases where the woman has died. But the legislature has said only that the woman shall not be considered an accomplice for the purpose of testifying. We believe it would be an unwarranted exercise of a legislative function for this Court to say that, because of similar considerations of policy, the statute will be construed as including, in its excusal of corroboration, the testimony of an agent or associate of the woman. Actually the statute seems to say, in effect, that the woman's testimony need not be corroborated even though she is in fact an accomplice. We can find no justification for construing this to apply to other accomplices who acted on the woman's behalf rather than on behalf of the abortionist.

It is our opinion that Coletta was an accomplice as a matter of law and that corroboration of his testimony was required.

Other contentions of the appellant do not require discussion. However, we shall say that we find no merit in them.

The judgment is reversed.

PALMORE and STEWART, JJ., dissenting.

PALMORE, Judge (dissenting).

What is now the rule (RCr 9.62, formerly Crim.Code § 241) that a conviction cannot be had on the uncorroborated testimony of an accomplice was at common law merely a "counsel of caution" customarily given by the judge to the jury. It was not binding. The jury was the ultimate judge of the credibility of the witness on whose testimony the prosecution depended.[1] But when in the course of the popular political movement that saw most of the states, by statute or constitution, eradicate the trial judge's traditional function of advising the jury with respect to the weight of the evidence,[2] in many jurisdictions, including ours, this cautionary practice was made a fixed rule of law.[3] Wigmore suggested, with ample good reason, that the result is unfortunate, it being "impossible and anachronistic to determine in advance that * * * a given man's story must be distrusted."[4] His quotation from Chief Baron Joy, in which the following excerpts appear, is appropriate:

"Why a fixed, unvarying rule should be applied to a subject which admits of such endless variety as the credit of witnesses, seems hardly reconcilable to the principles of reason. * * * The rule applies with equal force to the accomplice who may apprehend but a month's imprisonment for the most trifling petit larceny, and to him who may reasonably dread death for an atrocious murder. Universal and undiscriminating, the rule levels all distinctions. Where then is the necessity for, or good sense in, such a rule? Why not leave the credit of the accomplice to be dealth with by the jury, subject to such observations upon it from the judge as each particular case may suggest? * * * That persons whom the interest of the community require, and the principles of sound policy invite to come forward, should not be marked by a rule which has not been deemed necessary in the case of more atrocious offenders not appearing in the character of accomplices, seems to me to be what is required by reason and good sense."

It seems anomalous that one murderer can convict another on his own testimony, but only if they were not involved in the same murder. The accomplice rule was the exact device by which the top brains of "Murder, Inc." were able to execute their "contracts" through hired assassins without fear of ap-

---

1. Wigmore on Evidence (3d ed.), § 2056.

2. Id., § 2551.

3. Id., § 2056.

4. Id., § 2057.

prehension and conviction. All the witnesses they left alive were accomplices.

It is my view that the accomplice rule ought to be amended and put back into the form of a precautionary admonition to the effect that if the witness was an accomplice the jurors shall consider that circumstance as bearing on the credibility of his testimony. Contrary to the inference which might be drawn from the majority opinion that this is a legislative problem, the rule now exists only by virtue of RCr 9.62. Hence it is procedural and is the responsibility of this court. But unless and until a majority of the court sees fit to consider modifying it, at the very least reasonable public policy argues against its being given a strict and mechanical construction.

KRS 436.020 abrogates the accomplice rule when the woman on whom an abortion is performed is the accusing witness. There is, of course, a rule of construction to the effect that by mentioning one thing in a statute the legislature evinces an intention to exclude other things. Again, however, this is but one mechanical rule among many. By equal logic it can be said that in repealing the Code of Criminal Practice in favor of rules to be promulgated by the court the legislature certainly intended to leave to the court the question of whether the testimony of accomplices other than the woman in an abortion case should require corroboration. But this is not really a matter of specific legislative intent; we all know that the omission of precise matters of application in a statute more often reflects a lack of any "intent" whatever than a conscious purpose to exclude.

Given a reasonable construction, it seems to me that KRS 436.020 expresses a public policy to the effect that an abortionist shall not be allowed to hide behind the accomplice rule. I think it is outrageous that this defendant, who has brought about a woman's death by performing an illegal abortion upon her person, is now to be set free simply by virtue of a rule that not only does not represent any fundamental principle, but

was of doubtful widsom from its inception —a rule which, in any event, should not and need not be given such a technical application as the majority opinion represents.

STEWART, C. J., concurs in this dissent.