Jane BROWN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Jan. 24, 1969.

Rehearing Denied June 6, 1969.

---

Damon A. Vaughn, Madisonville, for appellant.

John B. Breckinridge, Atty. Gen., Frankfort, Joseph H. Eckert, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Jane Brown has been found guilty by a jury of being an accessory before the fact (KRS 431.160) to the crime of abortion (KRS 436.020) performed upon the body of Brenda Teel by Ethel Penrod. Her punishment has been fixed at imprisonment for two years. She appeals, asserting that (1) she was entitled to a directed verdict of acquittal; (2) an erroneous instruction was given; (3) incompetent evidence was admitted; (4) the testimony of the accomplice was not sufficiently corroborated; (5) the court improperly permitted the Commonwealth to attack the testimony of Brenda Teel; and (6) the defendant was prejudiced by certain remarks of the trial judge.

Ethel Penrod (to whom we shall refer as Ethel) was tried and convicted upon an indictment accusing her of performing an illegal abortion upon Brenda Teel (to whom we shall refer as Brenda). At her trial Ethel strenuously denied her guilt and asserted that she did not know Brenda and had never seen her before. She also related that she was unacquainted with Jane Brown (to whom we shall refer as Jane). At Ethel's trial there was no attempt to identify Jane in any way, although reference was made to the fact that Jane had made the preliminary arrangements for the abortion.

Upon Jane's trial, Ethel recanted. She testified that her evidence given at her own trial was entirely false and admitted that she had performed the illegal operation upon Brenda and that Jane had arranged for it by telephonic communications, fixing the appointment for the operation. She also related that Jane had paid her $100 for the services. Brenda testified at Jane's trial that she paid to a woman (she steadfastly refused to say that it was the defendant Jane) $250 which, of course, strongly indicates that the intermediary accepted $150 for her part in the sordid affair.

At Jane's trial Brenda was called as a witness for the Commonwealth and at first refused to answer questions on the ground that she might be incriminated. The trial judge recessed the trial and conferred with the attorneys for some time and concluded that Brenda was not entitled to claim privilege against incrimination. But Brenda still refused to answer questions, and the trial judge caused her to be placed in jail for contempt of court subject to being released from custody upon her willingness to respond to pertinent questions propounded to her by the prosecuting attorney. Brenda reluctantly relented after a brief incarceration.

When she was interrogated by the Commonwealth's attorney, it was apparent that she was most hostile to the prosecution. The trial court, sua sponte, announced that the Commonwealth's attorney should regard the witness as hostile and examine her as a hostile witness. Brenda testified that she had learned from a friend that a woman named Jane Brown of Henderson could make arrangements for Brenda to have an abortion. She said that she called the telephone number furnished her by the friend and asked for Jane Brown. The woman who answered the 'phone identified herself as Jane Brown, and preliminary arrangements for the abortion were then made. This call occurred on June 5, 1967, according to Brenda's evidence. On June 12, 1967, Brenda called the same telephone

number, as directed by the Jane Brown to whom she first talked, and made final arrangements for the abortion to be performed on June 13, 1967. Pursuant to those arrangements, Brenda said, she met a woman at Pearson's Tavern in Henderson. From there she and the woman traveled in the woman's car to the residence of Ethel in Daviess County. Brenda testified that she gave the woman $250 and waited in the automobile during the brief time when the woman was in Ethel's residence. The woman came from Ethel's house and motioned for Brenda to go in, which she did. The illegal operation was then performed by Ethel according to the evidence given by Brenda and Ethel.

Brenda experienced some discomfort a day or two after the illegal operation and sought medical attention at a hospital in Henderson. Dr. M. G. Howell treated Brenda and learned from her that she had had the illegal abortion. He reported the matter to the police at Henderson, and the prosecutive investigation was begun. At no time was Brenda called upon to point out or identify any individual as the Jane Brown to whom she referred, although she was promptly asked to and did identify Ethel within a very few days after the investigation had started. Brenda described the woman whom she knew as Jane Brown as being a tall, slender, attractive female with short, dark hair whose age she estimated as being in the late thirties or early forties.

Brenda testified at Jane's trial that she was unable to say that the defendant on trial was the same person who had accompanied her to Ethel's residence and arranged for the abortion. There was evidence, in addition to the physical presence of the defendant, that the defendant on trial fit the description which Brenda had furnished to the officers earlier.

The District Commercial Supervisor for the Southern Bell Telephone Company produced records of the company which reflected that only one residence telephone was listed in Henderson in the name of Jane Brown at an address on U. S. 60 South. The records showed that on June 6, 1967, a telephone call was made from the Henderson telephone listed in the name of Jane W. Brown to a pay telephone located in Owensboro in an establishment known as Ethel's Place. Ethel's Place was then owned by Ethel Penrod, although Ethel did not work there. The telephone records further disclosed that two calls were made from the Henderson number of Jane W. Brown to Ethel's Place in Owensboro on June 12, 1967. The telephone company's records reflected that there were sixteen calls from the Henderson number of Jane W. Brown to the Owensboro number at Ethel's Place between January 1, 1967, and June 15, 1967, one of which was placed from another town but charged to the telephone of Jane W. Brown.

Brenda testified that shortly before Jane's trial she called the telephone number listed for Jane W. Brown in Henderson and requested permission to call upon that telephone subscriber. Brenda did go to the home of the defendant pursuant to that call, but the defendant, acting on advice of counsel, declined to talk with her. Brenda was unable, to say, however, that the defendant to whom she talked on that occasion was the same woman to whom she had talked on the telephone in arranging the abortion or with whom she had traveled as she went to and from the scene of the abortion.

 The prime contention of the appellant is that the Commonwealth failed to present sufficient testimony in corroboration of Ethel's evidence. Admittedly, Ethel was an accomplice of someone named Jane Brown—the question is whether the Jane Brown on trial is the Jane Brown to whom Ethel referred.

RCr 9.62 provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commis-

sion of the offense; and the corroboration is not sufficient if it merely shows that the offense was committed, and the circumstances thereof. In the absence of corroboration as required by law, the court shall instruct the jury to render a verdict of acquittal."

We conclude that the evidence presented was sufficient as corroboration of the testimony of Ethel. The "other evidence tending to connect the defendant with the commission of the offense" is found in a series of circumstances: The identity of name is at least one circumstance to be considered; the fact that only one telephone was listed for Jane Brown in Henderson in the pertinent period is another link in the chain; the fact that long-distance telephone calls were placed from the Henderson telephone of Jane Brown to the Owensboro telephone in Ethel's Place, three of which were significantly connected with the chronology involved in the illegal operation, is another strong bit of evidence fitting into the jigsaw puzzle pattern. It is recalled that Brenda had furnished a physical description of Jane Brown shortly after the abortion and quite some time before the trial of Ethel or Jane. The description which Brenda furnished substantially fits the description of the defendant-appellant Jane. All of these things could, we suppose, be merely matters of strange coincidence, but we think it would unduly strain credulity to hold as a matter of law that the pattern of circumstances which we have just related fails to connect the Jane Brown on trial with the commission of the charged offense. We hold that these circumstances warranted submission of the issue to the jury.

■ Miller v. Commonwealth, 285 Ky. 251, 147 S.W.2d 394, relied on by appellant, does not support her contention that she was entitled to a directed verdict of acquittal. In Miller, the court construed former Criminal Code Section 241 as requiring the elimination of the accomplice's evidence in testing whether there be sufficient other evidence tending to connect the accused with the crime. But the court pointed out in Miller that the corroborative testimony need not be sufficient to establish guilty connection of the accused with the commission of the crime but need only tend to so connect the accused. It is our view that the corroborative evidence which we have discussed meets that test. See Hopper v. Commonwealth, Ky., 419 S.W.2d 756, and compare Goodhue v. Commonwealth, Ky., 415 S.W.2d 845, in which we held corroborative evidence insufficient as to one defendant and sufficient as to the other. Appellant relies on Richmond v. Commonwealth, Ky., 370 S.W.2d 399, in which this court held that a defendant charged with abortion could not be convicted on the uncorroborated testimony of the aider and abettor. In that case there was no corroborative evidence, as the victim of the crime had died. As noticed in Richmond, KRS 436.020(3) specifically provides that the aborted woman is a competent witness and not an accomplice in a prosecution for the abortion. Brenda was not an accomplice. Although she testified reluctantly, she did relate many circumstances which strongly tend to connect the Jane Brown on trial with the commission of the offense.

■ Appellant complains of the court's Instruction No. 3 given in compliance with RCr 9.62. The portion of the instruction criticized is: "The Court instructs the Jury that the witness, Ethel Penrod, is an admitted accomplice of Jane Brown and that a conviction cannot be had on her testimony alone unless corroborated by other evidence tending to connect the defendant with the commission of the offense." Appellant contends that the quoted portion of the instruction had the effect of telling the jury that the Jane Brown on trial was the same Jane Brown of whom Ethel gave incriminating evidence. We do not so regard the instruction. It is observed that the court told the jury that Ethel was an admitted accomplice of Jane Brown but did not say that it was the Jane Brown on trial. The court pointedly used the word "defendant" in that portion of the instruc-

tion requiring other evidence tending to connect the defendant with the commission of the offense. In light of the fact that the defendant's entire argument to the jury was pitched on the premise that she was not the Jane Brown to whom reference had been made, it is plain that the jury could not have been misled by the instruction. See Dalzell v. Commonwealth, Ky., 312 S.W.2d 354.

 Appellant asserts that the testimony offered through the telephone official was incompetent and that it did not serve to corroborate the evidence of Ethel. We disagree as to both contentions. The witness was the supervisor of the district in which the records were made in the normal course of business through an intricate computer process. As noted in Time Finance Company v. Beckman, Ky., 295 S.W.2d 346, 349, the "shopbook rule" is well established in this jurisdiction. The records presented were admissible pursuant to that rule. It seems clear to us that the telephone records did tend to corroborate the evidence of Ethel and also strongly bolstered the evidence of Brenda, since calls emanated from Jane Brown's telephone to Ethel's Place on two dates mentioned by Brenda as being within the pertinent time. Cf. Sanders v. Mattick, Ky., 420 S.W.2d 124.

The fourth point presented by appellant is her claim that she was not identified by any evidence other than the testimony of the accomplice. We have already presented our views reflecting that we do not reach the conclusion urged by the appellant in this respect.

 Appellant complains of the court's ruling that Brenda was a hostile witness. It is obvious from a reading of her testimony that she was a hostile witness. The trial court properly exercised his discretion by invoking the familiar rule permitting a hostile witness to be examined as if upon cross-examination. CR 43.05(1); RCr 13.-04. We do not regard the actions of the court nor of the Commonwealth's attorney

as an "attack" on Brenda's testimony. Rather, it was the proper effort of these officials to promote the orderly proceeding of the trial so that competent evidence could be elicited from the reluctant witness, Brenda.

As respects the final claim of error that appellant was prejudiced by remarks and statements from the Bench, it is sufficient to observe that although the appellant lists six questions under the heading "Questions Presented," only five of them are briefed. The sixth one is not briefed as such. Our reading of the record fails to disclose to us any improper remarks by the trial judge.

The judgment is affirmed.

All concur.